**Ricardo MORENO, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 14–95–00186–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

March 13, 1997.

Rehearing Overruled May 1, 1997.

Robert G. Turner, Houston, for appellant.

William J. Delmore, III, Houston, for appellee.

Before LEE, AMIDEI and EDELMAN, JJ.

## OPINION

AMIDEI, Justice.

Ricardo Moreno appeals his conviction by a jury for misdemeanor driving while intoxicated. TEX.PENAL CODE ANN. § 49.04 (Vernon 1994 & Supp.1997). The trial court assessed his punishment at ninety days in the county jail and a $300.00 fine, enhanced by one prior misdemeanor DWI conviction pursuant to TEX.PENAL CODE ANN. § 49.09 (Vernon 1994 & Supp.1997). In two points of error, appellant contends: (1) the trial court erred in admitting evidence of appellant's prior deferred adjudication for attempted murder and, (2) the trial court erred in allowing a police officer to testify that appellant had over 0.10% blood alcohol concentration. We reverse and remand for new trial.

On September 28, 1994, at approximately 2:45 a.m., appellant was stopped by Officers Hewitt and Thacker for speeding and weaving. Appellant does not speak English and Officer Nieto, a Spanish-speaking officer, was summoned to the scene to assist in the administration of field sobriety tests. Officer Reuterman, who does not speak Spanish, was also called to the scene to administer field sobriety tests. The officers were unable to effectively communicate with appellant and took appellant to the police station for further testing. Appellant refused to take a breath test but did perform various field sobriety tests while being videotaped at the station. Appellant admitted to Officer Nieto (the translator) at the scene that he had two

beers. Officer Nieto testified, on rebuttal, that appellant admitted to "three or five" beers after questioning. Officer Hewitt testified appellant smelled strongly of alcohol and, in his opinion, was intoxicated. Officer Reuterman testified appellant failed the field sobriety tests at the scene. The videotape of appellant performing field sobriety tests at the station was taken approximately thirty-five minutes after appellant was initially stopped. The videotape was placed in evidence by the state and shown to the jury. The court interpreter, Stella Saenz, was called by the state to testify as to the statements and answers made by appellant in Spanish during the video. Ms. Saenz testified the sound on the video playback was "very, very bad." She stated that appellant missed "E & F" in his recitation of the alphabet in Spanish. Ms. Saenz further testified that appellant appeared to be having a hard time understanding the English-speaking operator who did not speak Spanish. Ms. Saenz stated appellant appeared confused and "that most of the time he's just trying to mimic what she's showing him." Ms. Saenz stated appellant's "cultural and educational level are low," that his fluency in Spanish and English was poor. Ms. Saenz also testified that appellant did not appear to be intoxicated and that his video was one of the best she had ever seen.

In point of error one, appellant contends the trial court erred in allowing the prosecution to introduce evidence establishing that appellant was on deferred adjudication for an unrelated felony offense. The record shows appellant was placed on ten years deferred adjudication on March 17, 1989, for attempted murder, the offense having occurred on July 10, 1984. At the time of trial, appellant had served five years and eleven months of the probation and was technically eligible to apply for a discharge of the deferred adjudication upon motion to the court for early release pursuant to section 20, article 42.12, Texas Code of Criminal Procedure, having completed over two years of community supervision. The record does not reveal that such a motion was entertained by appellant. The trial court conducted a hearing, out of the presence of the jury, before appellant testified at the guilt/innocence stage of the

trial. The purpose of the hearing was to determine the admissibility of testimony of appellant's deferred adjudication to impeach appellant's credibility as a witness. The state argued that when appellant takes the stand as a witness for himself, he is subject to impeachment as any other witness. The state further argued that *Paley v. State,* 811 S.W.2d 226, 229 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd) is authority for using deferred adjudication status for impeachment purposes by showing appellant's bias, motive or interest to testify falsely because a conviction in the DWI case could be used to revoke his deferred adjudication.

After the trial court found appellant's deferred adjudication to be relevant, appellant requested the trial court to conduct a balancing test under TEX.R.CRIM.EVID 403 that provides, "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." The court found the deferred adjudication was relevant and probative. The record indicates the trial court utilized the five factors listed in *Theus v. State,* 845 S.W.2d 874, 880 (Tex.Crim.App.1992) to be considered in weighing the probative value of a *conviction* against its prejudicial effect. The *Theus* factors considered by the trial court in weighing the probative value vs. prejudicial effect are: (1) the impeachment value of the prior crime, (2) the temporal proximity of the past crime relative to the charged offense and the witness' subsequent history, (3) the similarity between the past crime and the offense being prosecuted, (4) the importance of the defendant's testimony, and (5) the importance of the credibility issue. *Id.* at 880. We find no cases indicating the tests established by *Theus* apply to a determination of probativeness in cases such as this where a deferred adjudication is used to show only bias or interest of an accused in testifying as his own witness. We find no Texas authority wherein a deferred adjudication has been held admissible in evidence for the sole purpose of showing bias or interest

of an accused who testifies as his own witness.

■ A deferred adjudication is not a "conviction" and the trial court is authorized to receive a plea of guilty or plea of nolo contendere and defer further proceedings without entering an adjudication of guilty, and place the defendant on community supervision (formerly, "probation"). TEX.CODE CRIM.PROC. ANN. art. 42.12(5)(a) (Vernon 1979 & Supp. 1997); *McNew v. State,* 608 S.W.2d 166, 172 (Tex.Crim.App.1978).

■ When a defendant chooses to waive his privilege against self-incrimination by voluntarily taking the witness stand he is generally subject to the same rules as any other witness. *Bell v. State,* 620 S.W.2d 116, 124 (Tex.Crim.App.1980) (opinion on reh'g). He may be contradicted, impeached, made to give evidence against himself, cross-examined as to new matter, and treated in every respect as any other witness testifying in behalf of the defendant, except when some statute forbids certain matters to be used against him, such as proof of his conviction on a former trial of the present case or his failure to testify on a former trial or hearing. *Id.*

■ "Impeachment of a witness means adducing proof that such witness is unworthy of belief or credit [citations omitted]." *Willingham v. State,* 897 S.W.2d 351, 358 (Tex.Crim. App.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 385, 133 L.Ed.2d 307 (1995). "The credibility of a witness may be attacked, inter alia, by evidence that the witness is slanting his testimony against or in favor of a party as a result of personal interest or bias in the cause. TEX.R.CRIM.EVID. 612(b)." *Id.* The *Willingham* court continued:

What first must be established is a specific connection between the witness' testimony and the cause, disclosing an actual bias or motive [citation omitted], and this nexus must be demonstrated by laying the proper foundation. To lay a proper predicate for impeachment the witness should be asked about any possible interest or bias he may have before there is an attempt to prove interest or bias otherwise [citation omitted]. The witness must first be informed as to the circumstances supporting a claim of bias or interest and must be given an opportunity to explain or deny such circumstances. TEX.R.CRIM.EVID. 612(b) [citation omitted].

*Id.* at 358.

At the hearing on the use of appellant's deferred adjudication, the trial court ruled that the state would be permitted to ask limited questions concerning the deferred adjudication and they would be admitted for the sole purpose of showing appellant's "bias or motive for testifying truthfully or falsely on the witness stand." Appellant's motion for a "running objection" to the state's questioning of appellant on the witness stand concerning the deferred adjudication was granted by the trial court.

The record reflects appellant was asked the following questions with respect to his deferred adjudication by the prosecutor:

Q: Mr. Moreno, it's true, isn't it, that you are on deferred adjudication out of a felony court?

A: Yes.

Q: And it's true, isn't it, that a conviction in this case *could* result in that offense in the felony court being adjudicated (emphasis added)?

A: Yes.

Q: And, Mr. Moreno, isn't it true that a conviction in the felony court *could* result in you going to the penitentiary (emphasis added)?

A: Yes.

The trial court further included a limiting instruction in the jury charge which provided:

The defendant is on trial solely on the charge contained in the information. The State of Texas has introduced in evidence of [*sic*] another transaction other than the one charged in the information in this case. With reference to the other transaction, you are instructed that said evidence was admitted only for the limited purpose of showing bias or interest, if it does.

■ Under former article 38.29, Texas Code of Criminal Procedure (repealed by Texas Rules of Criminal Evidence effective

September 1, 1986, now rules 608, 609, Texas Rules of Criminal Evidence), unadjudicated criminal offenses were inadmissible for impeachment purposes, but pending charges against a witness were admissible for the limited purpose of showing bias, prejudice, interest, and motive of witness in testifying as he did. *Massengale v. State*, 653 S.W.2d 20, 22 (Tex.Crim.App.1983). Rule 609(a) of the Texas Rules of Criminal Evidence, states that a party may impeach a witness with "evidence that [the witness] has been convicted of a crime." A deferred adjudication is not a conviction and cannot be used to impeach a witness under rule 609(a). *Jones v. State*, 843 S.W.2d 487, 496 (Tex.Crim.App. 1992), *cert. denied*, 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993). In *Callins v. State*, 780 S.W.2d 176, 196 (Tex.Crim.App. 1986) (opinion on court's own motion for reh'g), *cert. denied*, 497 U.S. 1011, 110 S.Ct. 3256, 111 L.Ed.2d 766 (1990), a defendant was not entitled to impeach a state's witness on the basis of the witness' probationary status of deferred adjudication; the defendant failed to lay the necessary predicate that would invoke his right of confrontation because he failed to make any showing that the witness testified against him as a result of bias, motive or ill will emanating from his status of deferred adjudication. *Id.*

A witness for the defense or prosecution may be impeached by evidence of a pending deferred adjudication if a showing is made that the witness has testified as a result of bias, motive or ill will emanating from his status of deferred adjudication. *Callins*, 780 S.W.2d at 196; *Paley*, 811 S.W.2d at 229. Since appellant testified in his own behalf, he may be treated as any other witness and impeached as any other witness. *Bell*, 620 S.W.2d at 124. Where a prosecutor desires to impeach a defense witness with evidence showing ill feeling, bias, motive and animus on the part of the witness, the prosecutor must establish that the evidence is relevant and material to the defendant's case. *London v. State*, 739 S.W.2d 842, 847 (Tex.Crim.App.1987). Rule 404(b), Texas Rules of Criminal Evidence, provides in pertinent part:

**(b) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity....

The state did not specify at trial whether it was seeking to admit the evidence of appellant's deferred adjudication under rule 404(b), 608 or 609. The state points out in its brief that none of the rules dealing with impeachment of witnesses specifically address the admissibility of a criminal defendant's unexpired probation. Article 38.29, Texas Code of Criminal Procedure, had provided, in pertinent part: "The fact that a defendant in a criminal case ... is or has been charged by indictment ... with the commission of an offense ... shall not be admissible in evidence on the trial of any criminal case for the purpose of impeaching any person as a witness unless ... such person has been placed on probation and the period of probation has not expired." This particular impeachment provision was repealed as indicated in this opinion. The state further concedes that rules 608 and 609, Texas Rules of Criminal Evidence, are not applicable since they pertain to evidence of the character of the witness, and appellant's probation was not offered as proof of his character. The state argues it desired to show only that the appellant had a bias or motive to testify falsely in this particular case, which was not otherwise apparent to the jury. The state argues that appellant's motive to take the stand and falsely deny the commission of a criminal offense is greatly enhanced when the consequences extend to a potential twenty-year sentence in the penitentiary instead of the short jail sentence a misdemeanor offender could expect to serve for DWI. The state argues a defendant with a deferred adjudication pending might very well decide to take the stand and perjure himself to avoid a lengthy prison sentence and the "motive for perjury is self-evident." The state cites no authority for this proposition.

Appellant argued to the trial court that the deferred adjudication was not admissible impeachment evidence under rule 608 [specific

instances of conduct not admissible]. He further stated: "Every defendant has a bias and motive to testify because he's interested in the outcome of the case. The Judge, by allowing him to ask that question is interjecting an extraneous offense into this case which the relevance is very slight and the probative value is very slight. The prejudicial value is very great. We ask the Court to make a balancing under 403 to decide whether or not the probative value...." The trial court admitted the deferred adjudication to show bias or motive for testifying truthfully or falsely on the witness stand.

Appellant took the stand and testified he went home from work and had one beer before dinner and one beer at approximately 10:30 p.m. Appellant received a telephone call from his sister asking for a ride home from work. Appellant's sister got off work at 2:00 a.m. Appellant slept from 12:00 midnight until 2:00 a.m. and then drove to his sister's place of employment. When he arrived at the cantina where his sister worked, she was not there. He called from a local store and determined his sister had already left. On his way back home, appellant testified he was driving about thirty miles per hour, saw the police car on Canal street, and saw the police car start to follow him. Appellant observed the flashing, warning lights of the police car and stopped. Appellant testified two police officers were in the police car that stopped. He testified the Spanish-speaking officer and one other came to the scene. Appellant stated he had a medical problem concerning his abdomen and produced two photographs showing a recent surgical scar to his abdomen. He stated that the injury always hurts, especially after work and that he uses a hot water bottle to ease the pain. He testified he was not intoxicated. On cross-examination, the prosecutor asked appellant if it was true he told Officer Nieto he had five beers that night and appellant answered it was not true. The prosecutor then asked appellant the questions (set out in this opinion) concerning his prior deferred adjudication. On rebuttal, the prosecutor asked Officer Nieto what appellant told him about the number of beers he had. Officer Nieto testified that appellant stated he had two beers. Officer Nieto testified that

he asked appellant, "Come on man. Tell me the truth" and appellant then stated "Three or five."

A trial judge has broad discretion in admitting or excluding evidence. Only when a trial court has abused its discretion should an appellate court conclude that the ruling was erroneous. *Montgomery v. State*, 810 S.W.2d 372, 390–91 (Tex.Crim.App.1990) (opinion on reh'g). Before evidence is admissible, it must be relevant as defined by rule 401, Texas Rules of Criminal Evidence. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." TEX.R.CRIM.EVID. 401; *Montgomery*, 810 S.W.2d at 386. In determining relevancy, the courts look at the purpose for offering the evidence and whether there is a direct or logical connection between the offered evidence and the proposition to be proved. So long as there is any reasonable logical nexus, the evidence will pass the relevancy test. *Fletcher v. State*, 852 S.W.2d 271, 276–77 (Tex.App.—Dallas 1993, pet. ref'd). In *Montgomery*, the court of criminal appeals summarized appellate review of the trial court's ruling on relevancy of the evidence by stating:

> The trial court's ruling is not, however, unreviewable. Where the appellate court can say with confidence that by no reasonable perception of common experience can it be concluded that proffered evidence has a tendency to make the existence of a fact of consequence more or less probable than it would otherwise be, then it can be said the trial court abused its discretion to admit that evidence. Moreover, when it is clear to the appellate court that what was perceived by the trial court as common experience is really no more than the operation of a common prejudice, not borne out in reason, the trial court has abused its discretion. In either event the appellate court should recognize that the trial court erred to admit the proffered evidence, and proceed to determine harmfulness under TEX.R.APP.P. 81(b)(2).

Whether objected-to evidence of "other crimes, wrongs, or acts" has relevance

apart from character conformity, as required by rule 404(b) [Texas Rules of Criminal Evidence] is also a question for the trial court. The trial judge must conclude that the evidence tends in logic and common experience to serve some purpose other than character conformity to make the existence of a fact of consequence more or less probable than it would be without the evidence.

*Montgomery,* 810 S.W.2d at 391.

The questions by the prosecutor to appellant established that appellant (1) was on deferred adjudication for a felony offense, (2) that *if* he was convicted in this case, the conviction *could* result in an adjudication of the pending deferred adjudication and, (3) that *if* he was convicted of DWI in this case, and *if* this conviction resulted in a conviction by entry of a judgment of guilt in the deferred adjudication, he *could* go to the penitentiary. The prosecutor did not ask appellant if he had any possible interest or bias in testifying before there was an attempt to prove interest or bias. There was no proof by the state of any circumstances supporting a claim of bias or interest other than the fact of the pending adjudication that *could* result in a conviction *if* the state filed a motion to adjudicate based on the DWI conviction in this case. There was no proof by the state of any discussions between appellant and a probation officer about the DWI and possible consequences of a conviction and revocation of his deferred adjudication; there was no evidence of any pending motion to adjudicate the deferred adjudication because of the DWI (*conviction* for an offense is not necessary for revocation of probation). *Barrientez v. State,* 500 S.W.2d 474, 475 (Tex.Crim.App. 1973). There was nothing in the record indicating any pressure on appellant by the state to revoke his deferred adjudication if he was convicted of the DWI. There was nothing in the record that would indicate that appellant's testimony was "slanted" because of any bias, motive or ill will directed at the state emanating from his status on deferred adjudication. There is no evidence that appellant's deferred adjudication status in and of itself created bias or interest on his part sufficient to falsify his testimony. *See Dun-*

*can v. State,* 899 S.W.2d 279, 281 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd).

Accordingly, the state has failed to establish "a specific connection between the witness" [appellant's] testimony and the cause, disclosing an *actual bias or motive* (emphasis added). *Willingham,* 897 S.W.2d at 358. We find the evidence was not relevant in that the evidence of appellant's deferred adjudication status had no tendency to make the existence of "any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R.CRIM.EVID. 401; *London v. State,* 739 S.W.2d 842, 847 (Tex.Crim.App.1987). We hold the trial court abused its discretion in admitting testimony concerning appellant's deferred adjudication.

Having concluded that the trial court erred in admitting the testimony of appellant's deferred adjudication, we now consider whether the error was harmless. The applicable legal standard is whether, in the light of the record as a whole, there is a reasonable possibility the evidence complained of might have contributed to appellant's conviction or punishment. *See Denton v. State,* 920 S.W.2d 311, 312 (Tex.Crim.App. 1996). According to *Denton,* the appellate court is to apply the correct legal standard and consider the relevant factors outlined in *Harris v. State,* 790 S.W.2d 568, 584–589 (Tex.Crim.App.1989). *Id.* To properly conduct a harm analysis, the reviewing court should:

> Examine (1) the source of the error, (2) the nature of the error, (3) whether or to what extent it was emphasized by the State, and (4) its probable collateral implications. Further, the court should consider how much weight a juror would probably place upon the error. In addition, the Court must also determine whether declaring the error harmless would encourage the State to repeat it with impunity.

*Harris,* 790 S.W.2d at 587.

1. The source of the error is the prosecutor who introduced, over objection, testimony of the appellant concerning his deferred adjudication status.

2. The nature of the error. The state failed to prove by any evidence a specific connection between the witness' testimony and the cause, disclosing an actual bias or motive. No questions were propounded to appellant about any possible interest or bias he had prior to questioning him about his deferred adjudication. No proof was adduced that the state had taken any action or even talked to appellant concerning the possibility of attempting to revoke his probation and adjudicate his guilt for having committed an offense. The record indicates that the state felt that his mere status alone, and nothing further, was "self-evident" and gave him motive to testify untruthfully. *Willingham* requires proof of a specific connection between the witness' testimony and the cause which discloses the actual bias or motive. *Willingham*, 897 S.W.2d at 358. Failure to show the connection between the deferred adjudication and appellant's testimony renders the evidence irrelevant. *London*, 739 S.W.2d at 846. Since the proposed evidence is irrelevant, the trial court abused its discretion to admit that evidence and we are to proceed with a determination of harmfulness under rule 81(b)(2), Texas Rules of Appellate Procedure. *Montgomery*, 810 S.W.2d at 391.

3. Whether or to what extent it was emphasized by the state. The record indicates the prosecutor argued to the jury that appellant was on deferred adjudication and he "is facing an adjudication in that court if he's convicted here." The prosecutor further argued to the effect appellant was a lawbreaker and he "needs to follow the laws of the United States. He hasn't in the past and he didn't on this occasion."

4. Probable collateral implications. The evidence tended to indicate appellant was a criminal generally and he acted in conformity with a character propensity to break the laws by driving while intoxicated.

This is a case of first impression in Texas and to hold the error harmless would encourage the state to repeat it with impunity. To allow the state to introduce evidence of a defendant's deferred adjudication status without laying any type of predicate or showing a specific connection between the deferred adjudication and the crime for which he is charged would lead to unwarranted convictions as in this case.

*Denton* further mandates consideration of other relevant factors such as the overwhelming evidence of guilt on the issue of appellant's guilt and its "interaction with the other evidence." *Denton*, 920 S.W.2d at 312–313. If there is overwhelming evidence of appellant's guilt, the error may be considered harmless. Four police officers testified as to their investigation, their opinions that appellant was intoxicated, and that he failed the field sobriety tests. The videotape of appellant doing the same field sobriety exercises at the police station thirty-five minutes later indicated he was not intoxicated and there was testimony by the court interpreter, Ms. Saenz, that appellant did not appear intoxicated on the video, and the video was one of the best she had ever seen. Appellant admitted to two beers but stated he was not intoxicated.

To allow evidence of a prior felony deferred adjudication and testimony that he was aware he could go to jail if convicted of DWI would weigh heavily on the jury's decisionmaking process. The evidence of guilt is not overwhelming and the error was not harmless. We find there is a reasonable possibility that the evidence of appellant's deferred adjudication might have contributed to appellant's conviction. We hold this error was harmful and reversible. Appellant's point of error one is sustained.

■ We must consider appellant's point of error two as we conclude it also is reversible error. Should this case be again tried without our ruling on this point of error, the same evidence might well be again introduced by the state. In point of error two, appellant contends the trial court erred in allowing the state's witness to testify over objection that appellant had greater than 0.10% blood alcohol concentration, where the witness was not properly qualified to make such a statement or give such an opinion. The state contends appellant has waived this error because he did not object to all the testimony on this point.

The following questions and answers constitute the grounds for this point of error:

Q: Officer Reuterman, taking the field sobriety tests and other things that you observed about this defendant, were you able to form an opinion as to whether or not this defendant was intoxicated?

A. Yes. I could.

Q. And what was that opinion?

A. My opinion, as in all other cases I make, is I will not take anyone into the Intoxilyzer room who I believe is below the State's legal limit of .10 intoxication.

Q. And, In your opinion, was this defendant above the legal limit for intoxication?

MR. TURNER: I object. This witness has not been qualified to give an opinion as to that particular question. This goes more than intoxication.

THE COURT: That objection is overruled. Officer, if you have an answer, you can give use the answer. Do you think this person, after your tests, was above the legal limit of .10 that night?

A. Yes, sir. Yes, sir.

Q. [by prosecutor] In your opinion, had this defendant lost the normal use of his mental or physical faculties?

A. Very much so, yes.

Q. And, Officer, in your opinion—do you have an opinion as to what caused this defendant to lose the normal use of his mental and physical faculties?

A. It appeared to be intoxication of alcohol that was well past the legal limit as I stated.

In *Graham v. State,* 710 S.W.2d 588, 591 (Tex.Crim.App.1986), the court stated:

Contrary to the trial judge's observation, our research has yet to reveal any authoritative legal or medical work in which it is stated that the result that an intoxilyzer device might give can be based solely upon one's appearance.

In this case, the appellant refused to take the intoxilyzer test and Officer Reuterman was not qualified to testify that appellant was "over the legal limit." Officer Reuterman was not shown to know anything about the intoxilyzer or what causes it to give a particular result. Officer Reuterman was not qualified to express an expert opinion that the legal limit of .10 blood alcohol could be determined by one's appearance without an actual breath test. By affirmatively answering the trial judge's question, "Do you think this person, after your tests, was above the legal limit of .10 that night," Officer Reuterman left the jury with the impression that appellant was over the legal limit and was, by law, intoxicated.

We find that the trial judge erred in permitting Reuterman to testify that appellant was over the legal limit of .10 by just observing him and there was no proof of Reuterman's qualifications or of a breath test. *Id.*

■ The state argues appellant did not object to the first unresponsive answer of Officer Reuterman to the prosecutor's request for his opinion as to whether the appellant was intoxicated, which was: "My opinion, as in all the other cases I make, is I will not take *anyone* into the Intoxilyzer room who I believe is below the State's legal limit of .10 intoxication." The answer was not responsive to the prosecutor's question and did not actually state any opinion with respect to the appellant's condition; the answer merely qualifies him as able to form an opinion of people in general who are taken to the intoxilyzer room for breath tests. On appeal, appellant does not object to this blanket statement by the officer that he can evaluate the blood alcohol level of a suspect by the person's appearance. It was the prosecutor's next question that was directed specifically at the defendant, that was the error complained of on this appeal, to wit: "And, in your opinion, was this defendant above the legal limit for intoxication?" At that point, appellant's trial counsel objected because the witness had not been qualified to give an opinion as to that particular question. The court overruled the objection and let the officer testify that he thought appellant was over the legal limit. The next two questions ask for an opinion by the officer concerning the loss of the normal use of appellant's mental and physical faculties. Again, the officer's answer was not responsive and he stated "It appeared to be intoxication of alcohol that

was well past the legal limit as I stated." Appellant's further objection would have been futile. The trial judge had just overruled appellant's objection to the prosecutor's question calling for an opinion based on appellant being "above the legal limit." The trial judge also stated the officer would be permitted to give his opinion.

In *Graham*, a similar question and answer colloquy occurred and the court of appeals held that because appellant's counsel did not object after the prosecuting attorney re-asked his question, nothing was preserved for review. The court of criminal appeals in *Graham* did not agree and held it would have been "rather futile for the appellant's attorney to have repeated his objection to Davis' first question," or to have made another objection to Davis' second question, in light of the fact that the trial judge had just overruled his objection to the first question and authorized the officer to give his opinion. *Graham*, 710 S.W.2d at 591–92. We find that error was preserved for appellate review.

We hold the trial judge erred in permitting Officer Reuterman to express his opinion that appellant was "above the legal limit of .10" because Officer Reuterman was not qualified to express an expert opinion that the legal limit of .10 blood alcohol level could be determined by one's appearance.

█ Having concluded that the trial judge erred, we must next decide whether the error was harmless. In making the determination whether error was harmless to the appellant, the test is not whether a conviction could have been had without the improperly admitted evidence, but, instead, is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. *Graham*, 710 S.W.2d at 592. We also consider the relevant factors set out in this opinion in *Denton*, 920 S.W.2d at 312–13 and *Harris*, 790 S.W.2d at 587.

█ 1. The source of the error. The judge erred in admitting testimony of an unqualified police officer that appellant was over the "legal limit of .10" as determined from observation of appellant's appearance.

2. The nature of the error. Impermissible testimony of a person not qualified to give expert opinion on the results of a breath test.

3. Whether or to what extent it was emphasized by the state. The exact testimony of Officer Reuterman concerning appellant being over the legal limit was not mentioned by the prosecutor in closing argument. Argument was confined to failure of the field sobriety tests, the integrity of experienced police officers, and the fact that appellant had lost the normal use of his mental and physical faculties.

4. The collateral implications. As in *Graham*, the evidence "boils down to a swearing match between" appellant, the four police officers and, Ms. Saenz as to her observations of appellant's video. By allowing the testimony of Officer Reuterman to the effect that appellant was over the legal limit of .10, the jury was left with the impression that he was legally intoxicated. In this case, there was no overwhelming evidence of appellant's guilt and the evidence of intoxication was contradicted. The videotape supported appellant's testimony that he was not intoxicated; likewise, Ms. Saenz's testimony that appellant did not appear intoxicated left room for doubt.

We conclude there is a reasonable possibility that the prejudicial effects of the erroneously admitted testimony of Officer Reuterman contributed to appellant's conviction. Consequently, we conclude that the error in admitting the evidence was harmful and, therefore, reversible. To conclude otherwise would encourage the state to repeat the error with impunity by seeking to introduce opinions of police officers unqualified to give expert testimony on intoxication based on one's appearance indicating the person was over the "legal limit." Appellant's point of error two is sustained.

The judgment and sentence of the trial court is reversed and this cause is remanded for a new trial.

LEE and EDELMAN, JJ., concur in the result only.