Ricardo MORENO, Appellant,

v.

The STATE of Texas.

No. 0710–97.

Court of Criminal Appeals of Texas, En Banc.

Oct. 27, 1999.

Rehearing Denied Dec. 8, 1999.

---

484

Robert G. Turner, Houston, for appellant.

William J. Delmore, III, Assist. DA, Houston, Betty Marshall, Assist. State's Atty., Matthew Paul, State's Atty., Austin, for the State.

WOMACK, J., delivered the opinion of the Court, in which MEYERS, PRICE, HOLLAND, JOHNSON, and KEASLER, JJ., joined.

When the appellant testified at his jury trial for misdemeanor DWI, the trial court permitted the State to impeach him with evidence that he was on felony community supervision and could be sent to prison if he were convicted of DWI. We agree with the Court of Appeals, albeit for somewhat different reasons, that the trial court abused its discretion in this case.

The contested issues of fact were whether the State's evidence was lawfully obtained[1] and whether the appellant was intoxicated. Police officers testified that on September 28, 1994 they saw the appel-

---

1. "In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of [any provisions of the Constitution or

lant's vehicle speeding, and when they followed him he swerved to the right, almost hitting the curb, and then swerved to the left, almost hitting an oncoming truck. The officers saw the appellant perform some field sobriety tests, and in their opinion he was intoxicated. The appellant refused to provide a sample of his breath for testing. The State introduced a videotape which showed the appellant performing some sobriety tests. The appellant testified that he did not speed or swerve, and that he was not intoxicated since he had drunk only two beers several hours before he was arrested.

Over the appellant's objection that the relevance and the probative value of the evidence were very slight, and the prejudicial value was very great, the trial court permitted the State to impeach the defendant with the fact that he was on community supervision:

Q. Mr. Moreno, it's true, isn't it, that you are on deferred adjudication out of a felony court?

A. Yes.

Q. And it's true, isn't it, that a conviction in this case could result in that offense in the felony court being adjudicated?

A. Yes.

Q. And, Mr. Moreno, isn't it true that a conviction in the felony court could result in you going to the penitentiary?

A. Yes.

The court's charge instructed the jury that "evidence of another transaction" which the State had introduced, "was admitted only for the limited purpose of showing bias or interest, if it does."

The State argued to the jury, without objection:

laws of the State of Texas, or of the Constitution or laws of the United States of America], then and in such event, the jury shall disregard any such evidence so obtained." TEX. CODE CRIM. PROC. art. 38.23(a), para. 2.

Ladies and gentlemen, conflicts in testimony do not create a reasonable doubt. We would not be here if there was not a conflict in the testimony. It's your job to resolve that conflict. You are the sole judges of the credibility of the witnesses.

Let's talk about those witnesses. You had four officers come in here. Although Defense—the defense lawyer says he's not saying that they are lying—a phantom truck. You heard them both testify. There was a truck out there that this defendant almost hit. Who here has the motive to lie? You heard the testimony. This defendant is on deferred adjudication out of felony court. This defendant is facing an adjudication in that court if he's convicted here. He admitted to you that he knows that he is aware of the fact that if he's convicted in this case, he faces time in the penitentiary. And so, ask yourselves: Who here had the motive to lie? Do four officers, veteran officers, some fifteen, sixteen years, really have the motive to come in here and perjure themselves and risk their lives and their jobs and their careers? Who here has the motive to lie? You are the one who can resolve that issue.

. . .

This defendant is from El Salvador. As Defense Counsel stated, he's been here for years and trying to raise a family here. Well, you need to send a message to this defendant that if he's going to remain in the United States, he needs to follow our laws, the laws of the United States. You need to send a message to this defendant that it's unacceptable for him to break our laws. This defendant needs to follow the laws of the

United States. He hasn't in the past and ˙he didn't on this occasion. You need to tell him if he's going to be here, we expect him to follow our laws. If he doesn't, we're going to convict him.

This defendant was driving that night. He had been drinking. He had lost the normal use of his mental and physical faculties. Defense counsel is right. The defendant had everything to lose in this case. He's fought tooth and nail to try and avoid it. You need to tell him that the buck stops here and he's responsible for his actions and we're going to hold him responsible. I ask you to find this defendant guilty.

The jury found the appellant guilty. The court assessed his punishment at 90 days' confinement in jail and a $500 fine. The record does not disclose what effect, if any, the conviction had in the felony case.

The Court of Appeals reversed the judgment of the trial court because of two errors, one of which was the admission of this evidence. *Moreno v. State,* 944 S.W.2d 685 (Tex.App.—Houston [14th Dist.] 1997). We granted review.[2]

■■■ Generally, a defendant who testifies may be impeached as any other witness may be impeached.[3] Under the rules of evidence witnesses may be impeached for, among other things, having bad character for truthfulness and for having a bias or interest in the particular case.[4]

Care must be taken in using evidence of unadjudicated crimes for impeachment. Such evidence is not admissible to show bad character for truthfulness. Rule of Evidence 609 permits only evidence of convictions, and Rule 608(b) does not allow

---

**2.** The second error also was in admitting evidence. *See Moreno,* 944 S.W.2d at 693–95. We granted review on the issue of whether the appellant's objection had preserved the second point for appellate review. Since we affirm the court of appeals' judgment on the first point of error, and the question of error preservation is unlikely to recur in the same

form at a retrial, we dismiss the State's ground for review of the second point.

**3.** *See Bell v. State,* 620 S.W.2d 116, 124–25 (Tex.Cr.App.1980).

**4.** *See generally Dixon v. State,* 2 S.W.3d 263 (Tex. Cr.App.1998) (opinion on rehearing).

specific instances of a witness's conduct to be proved or inquired into on the issue of credibility.

 But evidence that involves unadjudicated crimes could be admissible to show a witness's bias or interest in the particular case.[5] Evidence that a witness whom the State calls is subject to a criminal charge, or is on probation, can be used to show the bias or interest of the witness in helping the State.[6] This case is the mirror image of such cases, since it involves impeachment of a witness whom the defendant called—the defendant himself. A defense witness may be impeached with evidence of bias or interest.[7] A defendant might also be subject to such impeachment.

When the witness is a defendant, there is an additional danger to guard against— the danger that evidence of an unadjudicated crime could be taken as proof of the defendant's character as a criminal generally. Rule of Evidence 404(b) makes such evidence inadmissible for such a purpose.[8]

In this case the trial court permitted the State to elicit evidence that the appellant was on community supervision to prove that he had a bias or interest in avoiding conviction, since such a conviction could

result in his being adjudicated guilty and sent to prison. The appellant's objection was that the relevance value of such evidence was substantially outweighed by the danger of unfair prejudice and the other dangers that are mentioned in Rule of Evidence 403.[9] The trial court said on the record that it was using the balancing test we have prescribed under Rule 609 for evidence of prior convictions when they are introduced to impeach a witness.[10] That test is in some ways more favorable to this appellant than the test in Rule of Evidence 403.[11]

The Court of Appeals decided the case on the somewhat different basis that the evidence had no relevance value.

"We find that the evidence was not relevant in that the evidence of appellant's deferred adjudication status had no tendency to make the existence of 'any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence.' TEX.R.CRIM.EVID. 401 .... We hold the trial court abused its discretion in admitting testimony concerning appellant's deferred adjudication." *Moreno v. State,* 944 S.W.2d at 692.

**5.** *See* TEX.R. EVID. 613(b); *United States v. Abel,* 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984); *Evans v. State,* 519 S.W.2d 868 (Tex.Cr.App.1975).

**6.** *See Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Spain v. State,* 585 S.W.2d 705, 710 (Tex.Cr.App.1979).

**7.** CATHLEEN C. HERASIMCHUCK ET AL., TEXAS RULES OF EVIDENCE HANDBOOK 612 (3d ed.1998).

**8.** "Other Crimes, Wrongs or Acts. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than

that arising in the same transaction." TEX.R. EVID. 404(b).

**9.** "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX.R. EVID. 403.

**10.** *See Theus v. State,* 845 S.W.2d 874 (Tex.Cr. App.1992) (cited by the trial court).

**11.** "Rule 609(a) and (b) ... alter the balancing process with respect to the admission of prior conviction for impeachment. Such convictions are to be excluded unless the probative value of the evidence 'outweighs its prejudicial effect' (Rule 609(a)), or 'substantially outweighs its prejudicial effect' (Rule 609(b))." STEVEN GOODE ET AL., 1 TEXAS PRACTICE—GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL & CRIMINAL 127 n. 18 (2d ed.1993).

In reaching this conclusion, the Court of Appeals relied on the absence of any evidence that the defendant had an actual bias or prejudice, such as asking the defendant if he had a possible interest or bias, proving that he and his probation officer had discussed revocation of his deferred adjudication, proving that a motion to adjudicate his guilt had been filed, or any "pressure" by the state to revoke his deferred adjudication. *Ibid.* The Court of Appeals found requirements of "proof of a specific connection between the witness's testimony and the cause which discloses his actual bias or motive" and "a connection between the deferred adjudication and the defendant's testimony." *Id.* at 693. The Court inferred these requirements from the cases of *Willingham v. State,* 897 S.W.2d 351 (Tex.Cr.App.1995), and *London v. State,* 739 S.W.2d 842 (Tex.Cr.App. 1987).

In neither of these cases could the witness's bias or interest be inferred from the circumstances. Willingham wanted to impeach a State's witness, who was a prisoner, with the witness's unrelated statement that he was hoping to get out jail early through "a time cut or something was supposed to happen with his lawyer." *Willingham,* 897 S.W.2d at 358. Willingham showed no connection between the witness's expression of a natural, independent desire to be released from jail and his testimony at the trial. In *London* the State was erroneously allowed to impeach a defense witness with the fact that her brother had been, and was being, prosecuted by the same prosecutor, when there was no evidence that she knew that fact or was influenced by it. It is not clear to us that such additional showings of relevance would be required when a defendant's testimony is in question. And, if it were, the appellant was asked about, and admitted, a connection between his testimony and the outcome of the felony case.

We are willing to assume, as we consider this case, that the defendant's status on community supervision was relevant to his credibility as a witness for himself. We focus on the balance of the relevance value against the dangers.

 "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Rule of Evidence 403. "When Rule 403 provides that evidence 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,' it simply means that trial courts should favor admission in close cases, in keeping with the presumption of admissibility of relevant evidence." *Montgomery v. State,* 810 S.W.2d 372, 389 (Tex.Cr.App.1991). In such close cases, trial courts exercise broad discretion.

> To avoid [displacing the trial courts], appellate courts uphold the trial court's ruling on appeal absent an 'abuse of discretion.' That is to say, as long as the trial court's ruling was at least within the zone of reasonable disagreement, the appellate court will not intercede. The trial court's ruling is not, however, unreviewable. Where the appellate court can say with confidence that by no reasonable perception of common experience can it be concluded that proffered evidence has a tendency to make the existence of a fact of consequence more or less probable than it would otherwise be, then it can be said the trial court abused its discretion to admit that evidence. Moreover, when it is clear to the appellate court that what was perceived by the trial court as common experience is really no more than the operation of a common prejudice, not borne out in reason, the trial court has abused its discretion. In either event the appellate court should recognize that the trial court erred to admit the proffered evidence, and proceed to determine harmfulness
> ....

*Id.* at 391.

 When it applies Rule 403 a trial court normally is evaluating the factual

aspect of relevance, and its discretion is especially to be respected. In *Montgomery v. State, supra,* we mentioned some relevant criteria by which such a factual evaluation is to be made, and by which it can be measured on appeal. But if the trial court's evaluation is based on a mistake of law, the appellate court has a larger role. We made this point in another context in *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Cr.App.1997), when we said:

> [A]s a general rule, the appellate courts, including this Court, should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. The appellate courts, including this Court, should afford the same amount of deference to trial courts' rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. The appellate courts may review *de novo* "mixed questions of law and fact" not falling within this category.

In this case the trial court viewed the relevance question as though it was considering evidence of prior convictions when they are introduced to impeach a witness.[12] Evidence of prior convictions for felonies and crimes of moral turpitude has a relevance value on the issue of credibility that is well recognized. But, principally for reasons of law rather than fact, the value of the evidence in this case was very, very low.

■ The evidence was that the appellant could be adjudicated guilty of a felony and sent to prison if he were convicted. While this is a fraction of the truth, it is a fraction so small as to be seriously misleading. The evidence implied that only a conviction would lead to that result.[13] But revocation of community supervision does not require a conviction. In truth, if the appellant were acquitted of DWI he could have been adjudicated guilty in the district court nonetheless. The burden of proof in probation revocation is a preponderance of evidence.[14] Therefore an acquittal in a criminal trial, where the burden of proof is higher, is not a bar to revocation. A court may take judicial notice of the evidence at a criminal trial and revoke probation, even if the defendant was acquitted.[15] Alternatively, the transcript of the evidence at the DWI trial could sustain the felony court's decision to revoke. So the appellant's interest in avoiding conviction for the misdemeanor was not relevant to his credibility for any legal reason. In fact, it would be relevant only insofar as it could be shown either that the appellant mistakenly believed that the district court could not sentence him to prison if he were acquitted, or that the felony court had a policy of not revoking community supervision after an acquittal in a misdemeanor trial. No such showing was made.

There could be relevance value in a slightly different interest: a probationer could be said to have an interest in testifying in such a way as to avoid admitting a non-criminal violation of the conditions of his community supervision. But this was not the State's line of questioning. And we notice that the appellant admitted a non-criminal violation of a condition of his community supervision when he admitting drinking beer. The relevance value of the evidence toward proving this interest seems to be nil.

---

12. See *supra,* text accompanying note 10.

13. The State emphasized this misleading nature of this evidence in its final argument, saying, "He admitted to you that he knows that he is aware of the fact that if he's convicted in this case, he faces time in the penitentiary."

14. *Scamardo v. State,* 517 S.W.2d 293 (Tex. Cr.App.1974).

15. *Russell v. State,* 551 S.W.2d 710 (Tex.Cr. App.1977).

Next we consider the proponent's need for the evidence. The defendant's credibility was already impeached by his interest as the defendant in the lawsuit. Because of that interest, parties were incompetent to testify at common law.[16] The common-law disqualification has been abrogated by constitutions and statutes, but the reason to mistrust the evidence of a party remains obvious. Therefore the evidence of the felony community supervision was not necessary to show that the appellant's testimony was untrustworthy because he had an interest in the outcome of the trial. The evidence would have only the incremental value of showing that he had an interest to avoid, not merely misdemeanor punishment for DWI, but felony punishment for another offense. This would be useful if the State could argue that the appellant was a person who would not lie to avoid conviction for DWI, but would lie to avoid revocation of felony community supervision. But, as we have said, there was no legal or factual basis to argue in this case that the appellant could avoid the felony punishment by deceiving the misdemeanor jury.

■ The relevance value of the evidence that the State presented was therefore vanishingly low. The danger of its misleading the jury and being used for unfair prejudice was much higher. We have already mentioned the policy of our law, which is reflected in Rule of Evidence 404(b), that great care should be taken with evidence of other crimes, wrongs, or acts of a defendant. "Such concerns are particularly acute in criminal cases given the heightened sensitivity of our courts to a defendant's possible loss of freedom be-

cause the trier of facts believes that he is a bad person."[17] The danger is that, despite a limiting instruction, the jury will misuse the evidence for some other purpose than the limited purpose for which it was admitted. The ease of such misuse is demonstrated by the prosecutor in this case who, trained in law and experienced as she was, did not resist improperly arguing to the jury that they "need to send a message to this defendant that it's unacceptable for him to break our laws. This defendant needs to follow the laws of the United States. *He hasn't in the past* and he didn't on this occasion."[18]

The trial court has broad discretion in conducting the Rule 403 balancing test, one which we will not lightly disturb. In this case the trial court labored under some misapprehensions of law that caused it to fall into error. We agree with the Court of Appeals that the trial court abused its discretion.[19]

The judgment of the Court of Appeals is affirmed.

KELLER, J., filed a dissenting opinion in which McCORMICK, P.J.,and MANSFIELD, J., joined.

KELLER, J. delivered a dissenting opinion in which McCORMICK, P.J. and MANSFIELD, J. joined.

According to the majority opinion, the problem with the admission of the disputed evidence is that its probative value was so exceedingly low that it was far outweighed by its prejudicial effect. I disagree. The evidence that the jury heard—that appellant could go to prison for a felony if he were convicted of this misdemeanor—is

---

16. EDWARD W. CLEARY, McCORMICK ON EVIDENCE 159 (3d ed.1984).

17. GOODE ET AL., *supra* note 14, at 131.

18. This could only have referred to the evidence of the felony deferred adjudication. No other evidence of a conviction was before the jury. The court of appeals said the appellant's punishment was "enhanced by one prior misdemeanor DWI conviction." *Moreno,*

944 S.W.2d at 687. The judgment does not reflect such a finding on enhancement. The information contained such an allegation, but it was not read or proved to the jury. The court assessed punishment.

19. The Court of Appeals held that the error was not harmless. *Moreno,* 944 S.W.2d at 692–93. That holding is not before us.

extremely probative on the issue of his credibility. It is the fact that appellant could have gone to prison anyway that reduces the probative value of the evidence. But the jury never heard that.

The evidence, as presented, was likely to persuade the jury that appellant was not credible. The majority says that its value as to credibility was incremental (implying a small increment) because there is nothing to suggest that appellant would lie to avoid a felony but not a misdemeanor conviction. But I don't think that we can assume that juries necessarily discount a defendant's testimony just because his interest in obtaining an acquittal gives him a motive to lie on the stand. I think that the more reasons a defendant has to lie, the more a jury will question his credibility.

Since attacking appellant's credibility was the legitimate purpose for which the evidence was introduced, its value in that regard must be weighed for the State rather than against it in the R. 403 balance. Its damaging nature was reason for the court to admit it, not to exclude it. In this case, not only was the probative value of the evidence high, the prejudicial effect was low.

The only prejudice to be put on the scales was the danger that the jury would use the evidence as proof of appellant's character as a criminal generally. I think that danger was minimal. The jury was instructed to consider the evidence only for the limited purpose of showing bias or interest. Generally, we presume that a jury follows the trial court's instructions. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim.App.1998). The evidence here was simply the bare-bones fact of a felony, ameliorated by the fact that appellant had received community supervision. If we hold that this evidence is so prejudicial that the jury would not be able to follow the limiting instruction, we might as well just go ahead and hold that limiting instructions are not effective if the extraneous offense is a felony.

The difficulty with this case is that one has a tendency to assume that the evidence about adjudication of the felony was misleading. But to whatever extent it was misleading, that effect could have been alleviated by counsel eliciting testimony that appellant could be adjudicated regardless of conviction in this case, and that appellant knew it, if that were in fact true.[1] Had counsel done so, we could properly conclude that the probative value of the evidence was low. Because he did not do so, there is nothing in this record to show that the evidence presented was inaccurate. We should consider the record as it stands. The trial court was required to weigh the probative value of the evidence actually presented against its prejudicial effect. The former is high; the latter is low. I would hold that the trial court was within its discretion in admitting the evidence. I respectfully dissent.

---

1. It could be that appellant believed that an acquittal in the present case would protect him from adjudication of the felony. If that were true, then the evidence was not misleading because appellant's motive to lie would exist regardless of the validity of his belief. It could be that the particular felony judge would not revoke probation absent a conviction, and that appellant knew that.