**Robert Daniel MAXWELL, Appellant,**

v.

**The STATE of Texas.**

**No. 1671–00.**

Court of Criminal Appeals of Texas.

June 13, 2001.

---

Henry L. Burkholder, III, Houston, for Appellant.

S. Elaine Roch, Asst. DA, for the State.

## OPINION

HOLLAND, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, JOHNSON, and HOLCOMB, JJ., joined.

Appellant was convicted of aggravated robbery and was sentenced to 18 years confinement. The court of appeals affirmed his conviction. *See Maxwell v. State*, No. 01–98–01302–CR, 2000 WL 994345 (Tex.App.—Houston [1st Dist.], July 20, 2000) (not designated for publica-

tion). We granted appellant's petition for discretionary review to consider whether "the trial court committed reversible error in failing to permit appellant to impeach a key state witness by showing that at the time of trial he was serving deferred adjudication probation." We reverse the judgment of the court of appeals and remand the cause to that court for a harm analysis.

## I.

Around 1:00 a.m. on December 24, 1997, Mary Glover returned to her apartment after a Christmas party. Her roommate, Ray Nickerson, was sleeping on the couch. Mary went to sleep in her bedroom. Ray was awakened by knocks at the door and a voice saying that it was the police. The door was broken down, and appellant entered the apartment with three other men. They told Ray to get on the floor; he remained there during the entire incident.

Two of the men entered Mary's bedroom, asking her where the money was. Mary recognized appellant as one of her son's friends. Her son had invited appellant to her apartment that same week. Appellant shook Mary and hit her in the head with a pistol. When she reached for the gun, appellant and the men got scared and left with several Christmas presents. Tiger, another one of Mary's sons, had left three to four thousand dollars inside a teddy bear in Mary's apartment. But Mary did not know anything about the money, and appellant never found it.

Appellant was charged with aggravated robbery. At trial, appellant wanted to introduce evidence that Tiger, a State's witness, was on deferred adjudication probation for possession of a controlled substance. Appellant also wanted to introduce evidence that Tiger had been subsequently convicted of another crime while he was on deferred adjudication. The State objected, and the trial court

did not allow the evidence to be admitted in front of the jury.

At trial, Tiger testified that he and his brother were friends with appellant and that appellant had been to his mother's apartment on a few occasions, including the week of the robbery. Tiger stated that he had put three to four thousand dollars in his mother's apartment that same week. Tiger testified on cross-examination that he left money in his mother's apartment "a lot of times," but had never told anyone the money was there. He did not tell the investigating officers about the cash in the apartment. Although appellant's girlfriend testified that he was with her the entire night of the robbery, appellant was found guilty by a jury. He was sentenced to 18 years confinement.

On appeal, appellant argued that the trial court committed reversible error by not allowing him to impeach a key witness for the State, Tiger, with evidence that he was on deferred adjudication. Appellant contended that he should have been able to present evidence showing a motive for Tiger to testify favorably for the State, even though deferred adjudication is not a final conviction. Citing *Jones v. State*, 843 S.W.2d 487 (Tex.Crim.App.1992), the court of appeals stated that this Court has distinguished deferred adjudication from pending charges, which is an appropriate inquiry to show motive to testify for the State. *Maxwell*, slip op. at 3. It concluded that *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), was distinguishable from appellant's case because *Davis* involved an adjudication of guilt, while appellant's case was a deferred adjudication. Therefore, the court of appeals held that "before appellant is entitled to impeach a witness on deferred adjudication, the appellant must show something beyond the witness's deferred adjudication status." *Id.* at 4–5. Because appellant did

not "explain how the witness's deferred adjudication status could reveal any reason for testifying falsely against the appellant," the trial court did not err by excluding that line of cross-examination. *Id.* at 5.

## II.

■ In his brief, appellant argues that *Jones* is inconsistent with *Davis* and *Evans v. State*, 519 S.W.2d 868 (Tex.Crim. App.1975). He notes that a witness on deferred adjudication is virtually in the same position as a witness on community supervision; a witness on deferred adjudication fears probation revocation with the possibility of a full range of punishment. The issue, in appellant's opinion, is not whether Tiger had an actual motive to lie in favor of the State, but whether a rational jury could draw such an inference.

In *Callins v. State*, 780 S.W.2d 176, 196 (Tex.Crim.App.1986), the Court held that because the defendant failed to "lay the necessary predicate that would invoke the right of confrontation," the defendant was not denied the right to impeach a State's witness on the basis of his deferred adjudication probation status. *Id.* The *Callins* Court cited *Davis* for the proposition that the defendant must show that a witness "testified against him as a result of bias, motive or ill will emanating from his status of deferred adjudication." *Id.* In *Jones*, this Court cited *Callins* when it stated that "denying a defendant the right to impeach a witness on the basis of the witness' deferred adjudication probation [did] not deny the defendant his constitutional right of confrontation." 843 S.W.2d at 496. Today, we conclude that the holding in *Jones* is inconsistent with both prior and later opinions from this Court.

Before the holdings in *Callins* and *Jones*, this Court held in *Evans* that the defendants were denied the right of effective cross-examination when they were not

allowed to cross-examine a State's witness about his pending charge of sodomy. .519 S.W.2d at 873. The defendants did not want to question the witness on the pending indictment for general impeachment purposes; they wanted to cross-examine him to show bias, prejudice, interest and motive of the witness in testifying as he did. *Id.* at 871. This Court stated that the "claim of bias, interest and motive which the defense sought to develop was admissible to afford a basis for an inference of undue pressure because of [the witness's] vulnerable status as an indictee, as well as [the witness's] possible concern that he might be a suspect in the offense." *Id.* at 873.

Since *Jones*, this Court has discussed the appropriate areas for cross-examination. In *Carroll v. State*, 916 S.W.2d 494 (Tex.Crim.App.1996), the Court discussed whether a witness may be cross-examined concerning pending criminal charges. We concluded that the existence of an agreement between the State and the witness was not determinative. *Id.* at 500. Rather, "what [was] determinative [was] whether [the defendant] was allowed to demonstrate any possible bias or interest that [the witness] may hold to testify on the State's behalf." *Id.* The defendant in *Carroll* should have been permitted to cross-examine the State's witness regarding his pending charges; it "was appropriate to demonstrate [the witness's] potential motive, bias or interest to testify for the State." *Id.*

■ More recently, we indicated in *Moreno v. State*, 22 S.W.3d 482 (Tex.Crim. App.1999), that while unadjudicated crimes were not admissible to show bad character for truthfulness under Texas Rule of Evidence 609, "evidence that involves unadjudicated crimes could be admissible to show a witness's bias or interest in the particular case. Evidence that a witness whom

the State calls is subject to a criminal charge, or is on probation, can be used to show the bias or interest of the witness in helping the State." *Id.* at 485–86.

*Evans, Carroll* and *Moreno* are consistent with *Davis* and other cases decided by the United States Supreme Court. In *Davis*, the Supreme Court recognized that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." 415 U.S. at 316–17, 94 S.Ct. 1105. The Supreme Court stated that even though the jury might not have accepted the line of cross-examination posed by the defendant, the jury was "entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [the witness's] testimony which provided 'a crucial link in the proof . . . of [the defendant's] act.' " *Id.* at 317, 94 S.Ct. 1105 (quoting *Douglas v. Alabama*, 380 U.S. 415, 419, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965)).

Similarly, in *Alford v. U.S.*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931), the Supreme Court upheld the right of defense counsel to impeach a witness by showing that witness was incarcerated and facing charges in federal prison. The Court noted that the purpose of the cross-examination was not to discredit the witness. Instead, the purpose was to show that the witness was biased due to his vulnerability with the prosecution. *Id.* at 693, 51 S.Ct. 218. "[The defendant] was entitled to show by cross examination that his testimony was affected by fear or favor growing out of his detention." *Id.*

■ The court of appeals in this case interpreted *Jones* to require a defendant to "show something beyond the witness's deferred adjudication status." *Maxwell*, slip op. at 5. This interpretation is inconsistent with case law from this Court and the Supreme Court. Both prior and later

opinions from this Court and the Supreme Court have indicated that a witness's deferred adjudication probation status is sufficient to show a bias or interest in helping the State. *See Moreno,* 22 S.W.3d at 486; *Carroll,* 916 S.W.2d at 500; *Evans,* 519 S.W.2d at 873. Therefore, we hold that a defendant is permitted to cross-examine a State's witness on the status of his deferred adjudication probation in order to show a potential motive, bias or interest to testify for the State, and we disavow any language in *Jones* holding otherwise.

## III.

At trial, appellant made the following argument:

> We ask that evidence be presented to the jury, Your Honor, because they show bias on the part of this witness to lean in favor of the State and testify for what the State wants because he is already in a situation where his deferred adjudication can be revoked because of [a] prior conviction. And it is our position that puts him in a situation where he will be biased in favor of the prosecution and will testify in a manner which could be not truthful and that the jury should be entitled to know about this information.

Appellant wished to introduce Tiger's deferred adjudication as evidence of his potential motive, bias or interest to testify in favor of the State. The record shows that Tiger was placed on deferred adjudication probation on May 1, 1996, for the offense of possession of cocaine. A term of this probation was that he "commit no offense against the laws of this ... State." He was convicted of the offense of possession of marijuana less than two ounces on July 7, 1998. Hence, Tiger's deferred adjudication status was subject to adjudication at the time of appellant's trial in October of 1998. Tiger was not only on probation—

he was in the position of facing adjudication with a possible sentence beyond the limit of the term of his probation. *See* TEX.CODE CRIM. PROC. Art. 42.12 § 5. Tiger's status was essentially the same as a witness with a pending charge; his freedom was subject to the will of the State, who called him to testify *and* supervised his probation.

Therefore, we conclude that the jury was entitled to hear evidence of Tiger's deferred adjudication to decide the amount of weight and credibility to give to his testimony. We hold that the trial court erred in refusing appellant the opportunity to cross-examine Tiger concerning his deferred adjudication and subsequent conviction. The judgment of the court of appeals is reversed, and the cause is remanded to that court for it to conduct an harm analysis.

KELLER, P.J., delivered a dissenting opinion joined by KEASLER, J., and HERVEY, J.

KELLER, P.J., filed a dissenting opinion in which KEASLER, and HERVEY, JJ., joined.

The issue is a little more complicated than is apparent from the Court's opinion. The Court decides this case partly on the basis of Tiger's conviction for misdemeanor possession of marijuana, which occurred subsequent to him being placed on deferred adjudication for possession of cocaine. So the question seems to be not whether *Jones*[1] ought to be overruled, so that a witness may be impeached by his deferred adjudication status, but whether *Jones* is distinguishable from this case because, here, Tiger had been convicted of a new offense and was immediately subject to adjudication.

The fact of the new conviction was brought out at the hearing on the State's

---

1. *Jones v. State,* 843 S.W.2d 487 (Tex.Crim. App.1992).

motion in limine and was argued specifically by defense counsel. However, it was not mentioned in his brief on appeal, in the Court of Appeals' opinion, or in the petition to this Court. Appellant has defaulted this variation of his claim by failing to raise it in the Court of Appeals.

That being the case, the issue comes down to whether *Jones* should be overruled. The Court says that *Jones* is inconsistent with opinions from this Court and the Supreme Court, and that these opinions have indicated that a witness's deferred adjudication probation status "is" sufficient to show a bias or interest in helping the State.[2] I do not believe that the cases cited by the Court support either of these propositions.

Some of the cases the Court relies on are factually different from this case, especially in view of appellant's failure to include on appeal the fact of Tiger's subsequent conviction. In *Carroll*[3], for instance, the witness was not on deferred; he was incarcerated and awaiting trial. In *Evans*[4], not only was the witness under indictment in another cause, the Court's opinion suggests that he could himself have been a suspect in the case in which he testified. We said in *Moreno*[5] that evidence that involves unadjudicated crimes "could be" admissible to show a witness's bias or interest in the particular case—which appears to mean that sometimes it will and sometimes it will not. But we held there that, even assuming the relevance of the witness's deferred adjudication status to his credibility, evidence of that status was inadmissible under R. 403, so *Moreno* does not stand for the proposition that such evidence is admissible.

*Jones* is not "inconsistent" with these cases because the legal position of the witnesses in each case was different from Tiger's position. And neither this Court nor the Supreme Court has decided that deferred adjudication status "is" sufficient to show bias. To the contrary, the only case where we have addressed that specific issue was *Jones*, and there we held that deferred adjudication status was not sufficient.

I believe that the Court errs in including the subsequent conviction in its analysis. I also believe that the issues in *Carroll*, *Evans*, and *Moreno* differ significantly from the issue in this case. Therefore, I respectfully dissent.

---

**2.** *Slip op.* at 6

**3.** *Carroll v. State*, 916 S.W.2d 494 (Tex.Crim. App.1996).

**4.** *Evans v. State*, 519 S.W.2d 868 (Tex.Crim. App.1975).

**5.** *Moreno v. State*, 22 S.W.3d 482 (Tex.Crim. App.1999).