

# IN THE
# TENTH COURT OF APPEALS

### No. 10-07-00119-CR

**JULIE LORAINE BRADLEY,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 413th District Court**
**Johnson County, Texas**
**Trial Court No. F41042**

## MEMORANDUM  OPINION

Julie Loraine Bradley was convicted of intoxication manslaughter and sentenced to 20 years in prison.  Because the evidence was sufficient to support her conviction, and because there were no other issues raised that would support a reversal of her conviction, we affirm the trial court's judgment.

### FACTUAL BACKGROUND

On Sunday, July 24, 2005, Carmen Stanley headed north on I-35 in Johnson County in her 2003 Volkswagen Beetle.  Meanwhile, Kenneth Bullard was traveling south on 1-35 in Johnson County, headed for Austin.  Glancing in his rear-view mirror,

Bullard noticed a Ford Explorer approaching his vehicle at a high rate of speed which he estimated to be 90 miles per hour. Bradley was driving that Explorer. Fearing a collision, Bullard accelerated in an attempt to avoid being hit from behind. Bradley attempted to pass Bullard on the right and in doing so, clipped the back right of Bullard's vehicle. Bradley then swerved to the left and into the grassy median separating the northbound and southbound lanes of I-35.

A truck driver, traveling north on 1-35 and in the left lane beside Stanley, noticed the Explorer swerve into the median, hit a concrete drainage ditch and spiral airborne toward his truck. He applied his brakes and watched as the Explorer passed upside down in front of his windshield and hit his right "spot" mirror. The Explorer then crashed into Stanley's Beetle, crushing the Beetle and Stanley. Stanley died at the hospital from the massive injuries she sustained in the collision.

### ISSUES ON APPEAL

Bradley raises eight issues on appeal.

*Legal and Factual Sufficiency*

In her first two issues, Bradley contends that the evidence was both legally and factually insufficient to support her conviction.

In reviewing the legal sufficiency of the evidence, this Court looks at all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979); *Bigon v. State*, 252 S.W.3d 360, 366 (Tex. Crim. App. 2008). The sufficiency of the evidence is

measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

The factual sufficiency of the evidence standard of review was recently restated by the Court of Criminal Appeals:

> In a factual-sufficiency review, the evidence is reviewed in a neutral light. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *accord Johnson v. State*, 23 S.W.3d at 7. Only one question is to be answered in a factual-sufficiency review: Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt? *Watson*, 204 S.W. 3d at 415. Evidence can be factually insufficient in one of two ways: (1) when the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust; and (2) when the supporting evidence is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust. *Roberts*, 220 S.W.3d at 524 (citing *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 11); *see also Castillo v. State*, 221 S.W.3d 689, 693 (Tex. Crim. App. 2007). "[A]n appellate court must first be able to say, with some objective basis in the record, that the great weight and preponderance of the . . . evidence contradicts the jury's verdict before it is justified in exercising its appellate fact jurisdiction to order a new trial." *Watson*, 204 S.W.3d at 417. A reversal for factual insufficiency cannot occur when "the greater weight and preponderance of the evidence actually favors conviction." *Roberts*, 220 S.W.3d at 524. Although an appellate court has the ability to second-guess the jury to a limited degree, the factual-sufficiency review should still be deferential, with a high level of skepticism about the jury's verdict required before a reversal can occur. *Watson*, 204 S.W.3d at 417; Cain, 958 S.W.2d at 410.

*Grotti v. State*, No. PD-134-07, 2008 Tex. Crim. App. LEXIS 761, 22-24 (Tex. Crim. App. June 25, 2008). *Malik's* rule of measuring evidentiary sufficiency "by the elements of the offense as defined by a hypothetically correct jury charge" also applies when the evidence is reviewed for factual sufficiency. *Wooley v. State*, No. PD-0861-072008, Tex. Crim. App. LEXIS 762 (Tex. Crim. App. June 25, 2008).

A person commits the offense of intoxication manslaughter if the person (1) operates a motor vehicle in a public place; (2) is intoxicated; and (3) by reason of that intoxication causes the death of another by accident or mistake. TEX. PENAL CODE ANN. § 49.08(a) (Vernon Supp. 2007). Bradley challenges the legal and factual sufficiency of the evidence to support the last element: that by reason of her intoxication, she caused the death of another by accident or mistake. To prove this last element, the State agrees that it must prove Bradley's intoxication, and not just her operation of a vehicle, caused the fatal result. *See Glauser v. State*, 66 S.W.3d 307, 313 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). The Penal Code describes causation as: "A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." TEX. PENAL CODE ANN. § 6.04(a) (Vernon 2003); *Lomax v. State*, No. 10-03-00156-CR, 2006 Tex. App. LEXIS 2527, *16-17 (Tex. App.—Waco Mar. 29, 2006) (mem. op.), *aff'd*, 233 S.W.3d 302 (Tex. Crim. App. 2007).

Bradley argues that the evidence is legally and factually insufficient because she contends Officer Bolton, the accident reconstructionist, was unable to determine the cause of the first collision between Bullard and Bradley. She argues that the cause of the "unknown, unspecified, mysterious event" was the primary cause of the fatal accident. She also argues that the accident report listed only faulty evasive action and failure to control speed as factors to the accident. Bradley contends those factors are not products

of intoxication. She also urges us to consider a "multitude of reasons" why the first collision may have taken place that has nothing to do with intoxication.

Bradley fails to consider other testimony presented by Bolton during the trial. First, the record reveals that Officer Bolton was not unable to determine the cause of the first collision. In reviewing all of his testimony, he determined that Bradley was traveling at about 85 to 90 miles per hour when she struck the right rear of Bullard's vehicle, which caused a crease down the driver's side of Bradley's vehicle. Bullard perceived a problem and accelerated. Bradley then veered to the left and crossed the median where she became airborne, rotated in the air, and struck the Volkswagen. Second, Bolton repeatedly testified that he saw no signs of Bradley having perceived any problem at all and saw no signs that Bradley ever attempted to apply the brakes during the series of events. Bolton concluded that Bradley was at fault in the fatal accident. He determined that even though there were several vehicles involved, the accident was all one continuation of events. Bolton did not believe it was possible for Bullard to have caused the collision between his vehicle and Bradley's. He did not think that Bradley's inability to perceive a problem was caused by changing the radio or answering a cell phone. Further, Bolton testified that the accident report did not list intoxication because he and the other officers did not know the results of the blood test at the time they completed the report.

Bradley also fails to consider testimony presented by Dr. John Laseter, the lab director for Accu-Chem Laboratory which tested a sample of Bradley's blood. This testimony also provides evidence of a link between Bradley's intoxication and the death

of Carmen Stanley. Laseter, testified that Bradley's blood sample contained .28 milligrams per liter of the "D" form of methamphetamine, which is an illegal controlled substance and has "severe consequences" on the central nervous system. Laseter agreed that the ingestion of methamphetamine at certain levels would intoxicate a person. He testified that generally, anything above .2 milligrams per liter of methamphetamine in the blood is considered abusive, and that people demonstrate bizarre behavior as a result of that amount in the blood system.

Relying on the "Drugs and Performance Fact Sheets," published by the U.S. Department of Transportation, Laseter stated that in a review of 101 drivers under the influence of methamphetamine, where the average concentration of methamphetamine in the body was .23 milligrams per liter, the drivers' behavior included speeding, lane changes, erratic driving, accidents, unconsciousness, disorientation, agitation, staggering, awkward movements, and irrational or violent behavior. Laseter commented that the amount of methamphetamine in Bradley's system exceeded the average amount evaluated in the report. He also noted that the amount in her system at the time of the accident, about 4 hours prior to the taking of the blood sample, may have been as high as .3 milligrams per liter.

Laseter further testified that Valium and Xanax, mild depressants, were also identified in Bradley's blood sample. He stated that the combination of these drugs with the methamphetamine in Bradley's system would make her more intoxicated because even with the counteracting forces of the drugs, she would still have problems handling herself in a normal fashion.

In reviewing the evidence under the appropriate standards, the evidence is both legally and factually sufficient to support the last element of intoxication manslaughter: that by reason of Bradley's intoxication, she caused the death of another by accident or mistake. Issues one and two are overruled.

*Cross-examination*

Bradley next contends that the trial court erred in failing to allow Bradley to cross-examine Bullard about his prior placement on deferred adjudication community supervision for possession of a controlled substance. We review a trial court's decision regarding the admissibility of evidence under an abuse of discretion standard. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)

Bullard had been on deferred adjudication for possession of a controlled substance. He completed deferred adjudication community supervision in 2003, two years prior to the fatal accident. Bradley argued to the trial court that the completed deferred adjudication community supervision would be admissible to show bias or motive or prejudice, relying on the United States Supreme Court's opinion in *Davis*. *Davis v. Alaska*, 415 U.S. 308, 39 L.Ed.2d 347, 94 S.Ct. 1105 (1974). On appeal, Bradley further relies on the Court of Criminal Appeals' opinion in *Maxwell* to support her argument that the completed deferred adjudication community supervision is admissible to show Bullard's bias or interest in testifying for the State. *Maxwell v. State*, 48 S.W.3d 196 (Tex. Crim. App. 2001).

Generally, only evidence of *convictions* may be elicited from a witness for the purpose of attacking the credibility of the witness. *See* TEX. R. EVID. 609(a). Deferred adjudication is not a conviction. *Beedy v. State*, 194 S.W.3d 595, 599-600 (Tex. App.—Houston [1st Dist.] 2006) *aff'd*, 250 S.W.3d 107 (Tex. Crim. App. 2008). But evidence that a witness whom the State calls is subject to a criminal charge, or is on community supervision, can be used to show the bias or interest of the witness in helping the State. *Moreno v. State*, 22 S.W.3d 482, 486 (Tex. Crim. App. 1999). This concept was extended by the Court of Criminal Appeals in *Maxwell* to include witnesses on deferred adjudication community supervision. *Maxwell*, 48 S.W.3d at 200.

Bradley wants us to expand the results of *Davis* and *Maxwell* beyond the facts of those cases. In both cases, the witness sought to be cross-examined was, at the time of the trial, on a form of community supervision. The witness in *Davis* was on juvenile probation at the time of the trial; the witness in *Maxwell* was on deferred adjudication community supervision at the time of the trial. Here, Bullard had long since successfully completed his deferred adjudication and was no longer on community supervision for that offense. Neither *Davis* nor *Maxwell* stand for the proposition that an offense for which deferred adjudication was completed prior to trial may be inquired about on cross-examination of a witness. We decline to extend those cases to include the cross-examination of a witness regarding a completed deferred adjudication. Issue three is overruled.

*Amended Indictment*

In her fourth issue, Bradley asserts that the trial court erred in allowing the State to amend the indictment after the start of the trial in violation of article 28.10 of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 28.10 (Vernon 2006). Bradley, however, failed to preserve this complaint for review on appeal. *See* TEX. R. APP. P. 33.1. All a party has to do to preserve error is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it. *Saldano v. State*, 232 S.W.3d 77, 88 (Tex. Crim. App. 2007); *Keeter v. State*, 175 S.W.3d 756, 760 (Tex. Crim. App. 2005).

After the jury was seated but prior to the reading of the indictment, the State asked the trial court to strike through the word "alcohol" in count one of the indictment because it was "abandon[ing] that manner and means allegation in Count One…." Bradley's only response to the request was, " Judge, we would just like the indictment to stay as she was charged by the Grand Jury in 2005 and leave the word 'alcohol' in." This response, if it was intended to be an objection, did not sufficiently inform the trial court that Bradley believed the requested amendment to be improper under article 28.10. Accordingly, Bradley's complaint is not preserved, and issue four is overruled.

*Election*

Bradley next contends that the trial court erred in failing to require the State to make an election as to which offense, manslaughter or intoxication manslaughter, it would proceed on to a verdict. Bradley was charged with both offenses. After the State

rested, Bradley requested that the State make an election between manslaughter and intoxication manslaughter. Bradley admitted to the trial court that she had no case law to support her request to compel the election, but asserted that because of double jeopardy concerns, she believed an election was necessary. Relying on *Phillips v. State*, Bradley asserts on appeal that the trial court had no discretion but to order the State to make an election once the State rested its case-in-chief and upon Bradley's timely request. *Phillips v. State*, 193 S.W.3d 904, 909 (Tex. Crim. App. 2006).

*Phillips* is inapplicable to this proceeding. In *Phillips*, the State was required to make an election as to the specific evidence upon which it will rely as proof of the charged offense; differentiating it from evidence of other offenses or misconduct that is offered only in an evidentiary capacity. That is not the situation here and was not the argument made to the trial court. Two offenses were charged arising from the same set of facts. There was no question as to what specific evidence the State was relying on as proof. The concern Bradley expressed at trial was related to double jeopardy. Bradley's complaint on appeal does not comport with the complaint made to the trial court and is not preserved for our review. *Gallo v. State*, 239 S.W.3d 757, 768 (Tex. Crim. App. 2007); *Swain v. State*, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005). Issue five is overruled.

### Juror Misconduct

In her sixth issue, Bradley contends her conviction should be reversed because of juror misconduct. Specifically, Bradley complains about an incident where a juror approached a member of Bradley's family during a break and expressed his doubts as to Bradley's guilt. Bradley informed the trial court that the family member had been

approached by a juror. The trial court heard from the family member outside the presence of the jury and determined that no harmful contact had occurred between the juror and anyone else. The court then asked if there was anything from either the State or Bradley's counsel. Both replied "yes," but their answers did not concern the trial court's determination that no harmful contact had occurred. Bradley did not object to the trial court's determination, did not seek a mistrial, and did not seek any other relief as a result of the juror's conduct that resulted in an "adverse" ruling from the trial court.[1] Therefore, she cannot now complain about it on appeal. Her complaint is not preserved. TEX. R. APP. P. 33.1. Issue six is overruled.

*Deadly weapon*

In Bradley's seventh issue, she asks us to adopt the dissent's view in *Tyra v. State* which challenges the State's ability to obtain a deadly weapon finding in a vehicular manslaughter case. *Tyra v. State*, 897 S.W.2d 796, 805-811 (Tex. Crim. App. 1995) (Clinton, J., dissenting). A majority of the Court upheld the ability to obtain a finding that a motor vehicle is a deadly weapon in vehicular manslaughter cases. *Tyra*, 897 S.W.2d at 796-799. We decline to adopt the dissent's position. Issue seven is overruled.

*Cumulative Effect*

In her eighth and final issue, Bradley contends that the cumulative effect of the errors in issues three through five warrants a reversal of her conviction. We have found no errors in those issues; thus, there is no cumulative effect. Issue eight is overruled.

**CONCLUSION**

---

[1] This could have been a tactical decision by counsel since the juror expressed doubts as to Bradley's guilt.

We have overruled each of Bradley's issues on appeal.  Accordingly, the trial court's judgment is affirmed.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Vance, and
      Justice Reyna
      (Justice Vance concurs in the judgment)
Affirmed
Opinion delivered and filed October 8, 2008
Do not publish
[CR25]