IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00119-CR

 

Julie Loraine Bradley,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 413th District Court

Johnson County, Texas

Trial Court No. F41042

 



MEMORANDUM  Opinion










 

            Julie Loraine Bradley was convicted of
intoxication manslaughter and sentenced to 20 years in prison.  Because the
evidence was sufficient to support her conviction, and because there were no
other issues raised that would support a reversal of her conviction, we affirm
the trial court’s judgment.

Factual Background

            On Sunday, July 24, 2005, Carmen Stanley headed north on I-35 in Johnson County in her 2003 Volkswagen Beetle. 
Meanwhile, Kenneth Bullard was traveling south on 1-35 in Johnson County, headed for Austin.  Glancing in his rear-view mirror, Bullard noticed a Ford Explorer
approaching his vehicle at a high rate of speed which he estimated to be 90
miles per hour.  Bradley was driving that Explorer.  Fearing a collision,
Bullard accelerated in an attempt to avoid being hit from behind.  Bradley
attempted to pass Bullard on the right and in doing so, clipped the back right
of Bullard’s vehicle.  Bradley then swerved to the left and into the grassy
median separating the northbound and southbound lanes of I-35.

            A truck driver, traveling north on
1-35 and in the left lane beside Stanley, noticed the Explorer swerve into the
median, hit a concrete drainage ditch and spiral airborne toward his truck.  He
applied his brakes and watched as the Explorer passed upside down in front of
his windshield and hit his right “spot” mirror.  The Explorer then crashed into
 Stanley’s Beetle, crushing the Beetle and Stanley.  Stanley died at the
hospital from the massive injuries she sustained in the collision.

Issues on Appeal

            Bradley raises eight issues on appeal.

Legal and Factual Sufficiency

            In her first two issues, Bradley
contends that the evidence was both legally and factually insufficient to
support her conviction.  

            In reviewing the legal sufficiency of
the evidence, this Court looks at all of the evidence in the light most
favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Jackson
v. Virginia, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979); Bigon
v. State, 252 S.W.3d 360, 366 (Tex. Crim. App. 2008).  The sufficiency of
the evidence is measured by reference to the elements of the offense as defined
by a hypothetically correct jury charge for the case.  Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

            The factual sufficiency of the
evidence standard of review was recently restated by  the Court of Criminal
Appeals:

In a factual-sufficiency review, the evidence is
reviewed in a neutral light. Roberts v. State, 220 S.W.3d 521, 524 (Tex.
Crim. App. 2007); accord Johnson v. State, 23 S.W.3d at 7.  Only
one question is to be answered in a factual-sufficiency review:  Considering
all of the evidence in a neutral light, was a jury rationally justified in
finding guilt beyond a reasonable doubt? Watson, 204 S.W. 3d at 415. 
Evidence can be factually insufficient in one of two ways:  (1) when the
evidence supporting the verdict is so weak that the verdict seems clearly wrong
and manifestly unjust; and (2) when the supporting evidence is outweighed by
the great weight and preponderance of the contrary evidence so as to render the
verdict clearly wrong and manifestly unjust.  Roberts, 220 S.W.3d at 524
(citing Watson, 204 S.W.3d at 414-15; Johnson, 23 S.W.3d at 11); see
also Castillo v. State, 221 S.W.3d 689, 693 (Tex. Crim. App. 2007). 
"[A]n appellate court must first be able to say, with some objective basis
in the record, that the great weight and preponderance of the . . . evidence
contradicts the jury's verdict before it is justified in exercising its
appellate fact jurisdiction to order a new trial."  Watson, 204
S.W.3d at 417.  A reversal for factual insufficiency cannot occur when
"the greater weight and preponderance of the evidence actually favors
conviction."  Roberts, 220 S.W.3d at 524.  Although an appellate
court has the ability to second-guess the jury to a limited degree, the
factual-sufficiency review should still be deferential, with a high level of
skepticism about the jury's verdict required before a reversal can occur. Watson,
204 S.W.3d at 417; Cain, 958 S.W.2d at 410. 

 

Grotti v. State, No. PD-134-07, 2008 Tex. Crim. App. LEXIS 761, 22-24 (Tex. Crim. App. June 25, 2008).  Malik's rule of measuring evidentiary sufficiency
"by the elements of the offense as defined by a hypothetically correct
jury charge" also applies when the evidence is reviewed for factual
sufficiency.  Wooley v. State, No. PD-0861-072008, Tex. Crim. App. LEXIS
762 (Tex. Crim. App. June 25, 2008).  

            A person commits the offense of
intoxication manslaughter if the person (1) operates a motor vehicle in a
public place; (2) is intoxicated; and (3) by reason of that intoxication causes
the death of another by accident or mistake.  Tex.
Penal Code Ann. § 49.08(a) (Vernon Supp. 2007).  Bradley challenges the
legal and factual sufficiency of the evidence to support the last element: that
by reason of her intoxication, she caused the death of another by accident or
mistake.  To prove this last element, the State agrees that it must prove
Bradley’s intoxication, and not just her operation of a vehicle, caused the
fatal result.  See Glauser v. State, 66 S.W.3d 307, 313 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d).  The Penal Code describes causation as:
"A person is criminally responsible if the result would not have occurred
but for his conduct, operating either alone or concurrently with another cause,
unless the concurrent cause was clearly sufficient to produce the result and
the conduct of the actor clearly insufficient."  Tex. Penal Code Ann. § 6.04(a) (Vernon 2003); Lomax v.
State, No. 10-03-00156-CR, 2006 Tex. App. LEXIS 2527, *16-17 (Tex. App.—Waco Mar. 29, 2006) (mem. op.), aff’d, 233 S.W.3d 302 (Tex. Crim. App. 2007).

            Bradley argues that the evidence is
legally and factually insufficient because she contends Officer Bolton, the
accident reconstructionist, was unable to determine the cause of the first
collision between Bullard and Bradley.  She argues that the cause of the
“unknown, unspecified, mysterious event” was the primary cause of the fatal
accident.  She also argues that the accident report listed only faulty evasive
action and failure to control speed as factors to the accident.  Bradley
contends those factors are not products of intoxication.  She also urges us to
consider a “multitude of reasons” why the first collision may have taken place
that has nothing to do with intoxication.

            Bradley fails to consider other
testimony presented by Bolton during the trial.  First, the record reveals that
Officer Bolton was not unable to determine the cause of the first collision. 
In reviewing all of his testimony, he determined that Bradley was traveling at
about 85 to 90 miles per hour when she struck the right rear of Bullard’s
vehicle, which caused a crease down the driver’s side of Bradley’s vehicle. 
Bullard perceived a problem and accelerated.  Bradley then veered to the left
and crossed the median where she became airborne, rotated in the air, and
struck the Volkswagen.  Second, Bolton repeatedly testified that he saw no
signs of Bradley having perceived any problem at all and saw no signs that
Bradley ever attempted to apply the brakes during the series of events.  Bolton concluded that Bradley was at fault in the fatal accident.  He determined that even
though there were several vehicles involved, the accident was all one
continuation of events.  Bolton did not believe it was possible for Bullard to
have caused the collision between his vehicle and Bradley’s.  He did not think
that Bradley’s inability to perceive a problem was caused by changing the radio
or answering a cell phone.  Further, Bolton testified that the accident report
did not list intoxication because he and the other officers did not know the
results of the blood test at the time they completed the report.

            Bradley also fails to consider
testimony presented by Dr. John Laseter, the lab director for Accu-Chem
Laboratory which tested a sample of Bradley’s blood.  This testimony also
provides evidence of a link between Bradley’s intoxication and the death of
Carmen Stanley.  Laseter, testified that Bradley’s blood sample contained .28
milligrams per liter of the “D” form of methamphetamine, which is an illegal
controlled substance and has “severe consequences” on the central nervous
system.  Laseter agreed that the ingestion of methamphetamine at certain levels
would intoxicate a person.  He testified that generally, anything above .2
milligrams per liter of methamphetamine in the blood is considered abusive, and
that people demonstrate bizarre behavior as a result of that amount in the
blood system.  

            Relying on the “Drugs and Performance
Fact Sheets,” published by the U.S. Department of Transportation, Laseter
stated that in a review of 101 drivers under the influence of methamphetamine,
where the average concentration of methamphetamine in the body was .23
milligrams per liter, the drivers’ behavior included speeding, lane changes,
erratic driving, accidents, unconsciousness, disorientation, agitation,
staggering, awkward movements, and irrational or violent behavior.  Laseter commented
that the amount of methamphetamine in Bradley’s system exceeded the average
amount evaluated in the report.  He also noted that the amount in her system at
the time of the accident, about 4 hours prior to the taking of the blood
sample, may have been as high as .3 milligrams per liter.  

            Laseter further testified that Valium
and Xanax, mild depressants, were also identified in Bradley’s blood sample. 
He stated that the combination of these drugs with the methamphetamine in
Bradley’s system would make her more intoxicated because even with the
counteracting forces of the drugs, she would still have problems handling
herself in a normal fashion.

            In reviewing the evidence under the
appropriate standards, the evidence is both legally and factually sufficient to
support the last element of intoxication manslaughter: that by reason of
Bradley’s intoxication, she caused the death of another by accident or
mistake.  Issues one and two are overruled.

Cross-examination

            Bradley next contends that the trial
court erred in failing to allow Bradley to cross-examine Bullard about his
prior placement on deferred adjudication community supervision for possession
of a controlled substance.  We review a trial court's decision regarding the
admissibility of evidence under an abuse of discretion standard.  Cameron v.
State, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007); Montgomery v.
State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)

            Bullard had been on deferred
adjudication for possession of a controlled substance.  He completed deferred
adjudication community supervision in 2003, two years prior to the fatal
accident.  Bradley argued to the trial court that the completed deferred
adjudication community supervision would be admissible to show bias or motive
or prejudice, relying on the United States Supreme Court’s opinion in Davis. Davis v. Alaska, 415 U.S. 308, 39 L.Ed.2d 347, 94 S.Ct. 1105
(1974).  On appeal, Bradley further relies on the Court of Criminal Appeals’
opinion in Maxwell to support her argument that the completed deferred
adjudication community supervision is admissible to show Bullard’s bias or
interest in testifying for the State.  Maxwell v. State, 48 S.W.3d 196 (Tex. Crim. App. 2001).    

            Generally, only evidence of convictions
may be elicited from a witness for the purpose of attacking the credibility of
the witness.  See Tex. R. Evid.
609(a).  Deferred adjudication is not a conviction.  Beedy v. State, 194
S.W.3d 595, 599-600 (Tex. App.—Houston [1st Dist.] 2006) aff’d, 250
S.W.3d 107 (Tex. Crim. App. 2008).  But evidence that a witness whom the State
calls is subject to a criminal charge, or is on community supervision, can be
used to show the bias or interest of the witness in helping the State.  Moreno v. State, 22 S.W.3d 482, 486 (Tex. Crim. App. 1999).  This concept was
extended by the Court of Criminal Appeals in Maxwell to include
witnesses on deferred adjudication community supervision.  Maxwell, 48
S.W.3d at 200.

            Bradley wants us to expand the results
of Davis and Maxwell beyond the facts of those cases.  In both
cases, the witness sought to be cross-examined was, at the time of the trial,
on a form of community supervision.  The witness in Davis was on
juvenile probation at the time of the trial; the witness in Maxwell was
on deferred adjudication community supervision at the time of the trial.  Here,
Bullard had long since successfully completed his deferred adjudication and was
no longer on community supervision for that offense.  Neither Davis nor Maxwell
stand for the proposition that an offense for which deferred adjudication was
completed prior to trial may be inquired about on cross-examination of a
witness.  We decline to extend those cases to include the cross-examination of
a witness regarding a completed deferred adjudication.  Issue three is
overruled.

 

 

Amended Indictment

            In her fourth issue, Bradley asserts
that the trial court erred in allowing the State to amend the indictment after
the start of the trial in violation of article 28.10 of the Code of Criminal
Procedure.  See Tex. Code Crim.
Proc. Ann. art. 28.10 (Vernon 2006).  Bradley, however, failed to
preserve this complaint for review on appeal.  See Tex. R. App. P. 33.1.  All a party has
to do to preserve error is to let the trial judge know what he wants, why he
thinks himself entitled to it, and to do so clearly enough for the judge to
understand him at a time when the trial court is in a proper position to do
something about it.  Saldano v. State, 232 S.W.3d 77, 88 (Tex. Crim. App. 2007); Keeter v. State, 175 S.W.3d 756, 760 (Tex. Crim. App. 2005). 


            After the jury was seated but prior to
the reading of the indictment, the State asked the trial court to strike
through the word “alcohol” in count one of the indictment because it was
“abandon[ing] that manner and means allegation in Count One….”  Bradley’s only
response to the request was, “ Judge, we would just like the indictment to stay
as she was charged by the Grand Jury in 2005 and leave the word ‘alcohol’
in.”   This response, if it was intended to be an objection, did not sufficiently
inform the trial court that Bradley believed the requested amendment to be
improper under article 28.10.  Accordingly, Bradley’s complaint is not
preserved, and issue four is overruled.

Election

            Bradley next contends that the trial
court erred in failing to require the State to make an election as to which
offense, manslaughter or intoxication manslaughter, it would proceed on to a
verdict.  Bradley was charged with both offenses.  After the State rested,
Bradley requested that the State make an election between manslaughter and
intoxication manslaughter.   Bradley admitted to the trial court that she had
no case law to support her request to compel the election, but asserted that
because of double jeopardy concerns, she believed an election was necessary. 
Relying on Phillips v. State, Bradley asserts on appeal that the trial
court had no discretion but to order the State to make an election once the
State rested its case-in-chief and upon Bradley’s timely request.  Phillips
v. State, 193 S.W.3d 904, 909 (Tex. Crim. App. 2006).  

            Phillips is inapplicable to
this proceeding.  In Phillips, the State was required to make an
election as to the specific evidence upon which it will rely as proof of the
charged offense; differentiating it from evidence of other offenses or
misconduct that is offered only in an evidentiary capacity.  That is not the
situation here and was not the argument made to the trial court.  Two offenses
were charged arising from the same set of facts.  There was no question as to what
specific evidence the State was relying on as proof.  The concern Bradley
expressed at trial was related to double jeopardy.  Bradley’s complaint on
appeal does not comport with the complaint made to the trial court and is not
preserved for our review.  Gallo v. State, 239 S.W.3d 757, 768 (Tex. Crim. App. 2007); Swain v. State, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005). 
Issue five is overruled.

Juror Misconduct

            In her sixth issue, Bradley contends
her conviction should be reversed because of juror misconduct.  Specifically,
Bradley complains about an incident where a juror approached a member of
Bradley’s family during a break and expressed his doubts as to Bradley’s
guilt.  Bradley informed the trial court that the family member had been
approached by a juror.  The trial court heard from the family member outside
the presence of the jury and determined that no harmful contact had occurred
between the juror and anyone else.  The court then asked if there was anything
from either the State or Bradley’s counsel.  Both replied “yes,” but their
answers did not concern the trial court’s determination that no harmful contact
had occurred.  Bradley did not object to the trial court’s determination, did
not seek a mistrial, and did not seek any other relief as a result of the
juror’s conduct that resulted in an “adverse” ruling from the trial court.[1]  Therefore, she cannot now
complain about it on appeal.  Her complaint is not preserved.  Tex. R. App. P. 33.1.  Issue six is
overruled.

Deadly weapon

            In Bradley’s seventh issue, she asks
us to adopt the dissent’s view in Tyra v. State which challenges the
State’s ability to obtain a deadly weapon finding in a vehicular manslaughter
case.  Tyra v. State, 897 S.W.2d 796, 805-811 (Tex. Crim. App. 1995)
(Clinton, J., dissenting).  A majority of the Court upheld the ability to
obtain a finding that a motor vehicle is a deadly weapon in vehicular
manslaughter cases.  Tyra, 897 S.W.2d at 796-799.  We decline to adopt
the dissent’s position.  Issue seven is overruled.

Cumulative Effect

            In her eighth and final issue, Bradley
contends that the cumulative effect of the errors in issues three through five
warrants a reversal of her conviction.  We have found no errors in those
issues; thus, there is no cumulative effect.  Issue eight is overruled.

Conclusion

            We have overruled each of Bradley’s
issues on appeal.  Accordingly, the trial court’s judgment is affirmed.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before
Chief Justice Gray,

            Justice
Vance, and

            Justice
Reyna

            (Justice
Vance concurs in the judgment)

Affirmed

Opinion
delivered and filed October 8, 2008

Do
not publish 

[CR25]









[1] This
could have been a tactical decision by counsel since the juror expressed doubts
as to Bradley’s guilt.