**Opinion filed December 2, 2010**



# In The

# Eleventh Court of Appeals

_____

## No. 11-09-00029-CR
_____

## CHARLES WINDHAM, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 362nd District Court**

**Denton County, Texas**

**Trial Court Cause No. F-2008-1452-D**

## M E M O R A N D U M   O P I N I O N

The jury convicted Charles Windham of burglary of a building and assessed his punishment at fifteen months confinement. We affirm.

### I. *Background Facts*

On the night of April 21, 2008, Linda Roesler worked from 9:00 p.m. to midnight at the Golden Triangle Mall in Denton, Texas. She was trying to avoid her son, Charles Windham. Windham was living with Roesler, and she had recently told him that he could no longer stay with her. Windham became upset and the two argued.

The Golden Triangle Mall closed to the public at 9:00 p.m. At that time, security locked most of the corridors leading into the mall. Roesler was working her shift when Windham approached her carrying two black bags. Roesler testified that Windham was angry and that he backed her against a wall. Windham told her that if he had a gun he would kill her and then himself. He warned her that she could not hide in the mall forever. Roesler was scared. She testified that Windham had been taking medication and that his actions were unpredictable. She called security.

Mulugeta Aga and Cody Pinnow were security guards on duty that night. Aga recalled that, when he went to talk with Roesler, she appeared frightened. Roesler told him that her son was in the mall. While Aga and Roesler were talking, an alarm went off at a nearby kiosk. Pinnow investigated and found Windham. Pinnow told Windham that he was not allowed on the property after hours and that he would have to leave. Windham appeared cooperative, and the guards watched as he grabbed his bags and left the mall.

A little while later, Aga noticed the latch to a storage closet was open. Aga checked inside and found Windham. Aga told Windham to leave. Windham appeared cooperative. He picked up his bags, and Aga led him out of the mall. When the guards looked to see how Windham had reentered the mall, they found a piece of cardboard had been slipped between the door latch and the frame.

The guards were doing a corridor check when they noticed Windham's bags sitting inside one of the corridors. Assuming that he again had reentered the mall, they started to search for him. They found Windham walking around the center court. When they confronted him this time, he was agitated. Windham warned the guards not to touch him because he had military experience. The guards called Denton police and escorted Windham out of the mall.

Officer Trent Brooks responded to the call a little past midnight. After talking with Roesler and the security guards, Brooks arrested Windham for burglary. Officer Brooks drove Roesler back to her apartment after her shift. When they arrived, they found a kitchen knife stuck through two envelopes into the front door. The apartment had been trashed, with writing on the walls, torn-up photos, and several threatening notes written in Windham's handwriting.

At trial, Windham testified that he had gone to the mall that evening to tell his mother that he had found a ride to his doctor in Dallas the next day and to apologize for their earlier argument.

2

## II. *Issues*

Windham challenges the trial court's judgment with two issues. First, Windham argues that the trial court erred by denying his motion for new trial because he was denied effective assistance of counsel. Second, Windham contends that the evidence is legally insufficient to support his conviction for burglary, as the State did not prove that Pinnow was the owner of the mall or that Windham intended to commit an assault.

## III. *Motion for New Trial*

A trial court's denial of a motion for new trial is reviewed for an abuse of discretion. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). We view the evidence in the light most favorable to the trial court's ruling and uphold the ruling if it was within the zone of reasonable disagreement. *Id*. A trial court abuses its discretion by denying a motion for new trial only if no reasonable view of the record could support that ruling. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004).

The standard for ineffective assistance of counsel is the same under the Texas and Federal Constitutions. *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). A court must first determine whether Windham has shown that counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result would have been different but for counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The appellant has the burden of establishing that counsel was ineffective. *Thompson*, 9 S.W.3d at 813. In considering whether counsel's representation fell below an objective standard of reasonableness, a court must indulge in a strong presumption in counsel's favor. *Id*.

### A. *Mental History.*

Windham initially argues that he was denied effective assistance because counsel failed to bring up his mental history and his mental condition on the date of the burglary. Windham claimed to suffer from bipolar disorder, posttraumatic stress disorder, adult antisocial disorder with agoraphobia, and intermittent explosive disorder. He contends that presenting evidence of these disorders would have undercut the requisite intent for burglary.

Counsel testified, however, that he chose not to introduce evidence of Windham's mental history because he felt this would open the door to Windham's drug use. Additionally, Windham's mental disability claims are at odds with a competency evaluation that found he was

malingering. Windham's suggested strategy could have opened the door to this evidence as well. Trial counsel's decision to avoid Windham's mental condition was part of a sound trial strategy, and therefore, no ineffective assistance is shown.

### B. Roesler's Criminal History.

Second, Windham argues that he was denied effective assistance because counsel failed to impeach Roesler with her status as a probationer. Windham wanted counsel to question Roesler on her felony probation for possession of cocaine, methamphetamine, and organized crime. Windham suspected that Roesler might have struck a deal with the State regarding her probation.

Counsel testified that he did not bring up the 1999 felony cases against Roesler because adjudication on them was deferred and, thus, they were not convictions available for impeachment. At the time of Windham's trial, a witness on deferred adjudication could be cross-examined on the status of their probation to show a potential motive, bias, or interest to testify for the State. *Maxwell v. State*, 48 S.W.3d 196, 200 (Tex. Crim. App. 2001).[1] Counsel testified that he did not use the 1999 felony cases to argue bias because he did not know if Roesler was still on probation, and he considered the cases too remote for her to have an incentive to make a deal with the State. The record does not indicate whether Roesler was still on probation, but the prosecutor testified that no deal had been made with Roesler regarding her testimony. Even if we assume that counsel should have investigated this issue more thoroughly, Windham did not provide any evidence that impeaching Roesler with her probation status reasonably could have changed the result of the trial.

### C. Cross-Examination of Witnesses.

Third, Windham claims that he was denied effective assistance because counsel failed to adequately cross-examine witnesses. At the hearing on his motion for new trial, Windham asserted that counsel "hardly questioned anybody."

Counsel testified that he cross-examined witnesses as his trial strategy demanded. The record shows that, on cross-examination, counsel questioned the State's witnesses about Windham's behavior that night, if Windham explained to them why he was at the mall, whether they witnessed Windham threatening his mother, and whether Windham gave any indication of

---

[1]The Court of Criminal Appeals recently overruled *Maxwell* and now requires a questioner to show some logical connection between the witness's status as a probationer and the witness's testimony. *Irby v. State*, No. PD-1097-08, 2010 WL 2382594, at *7 (Tex. Crim. App. June 16, 2010).

having a physical ailment. Counsel's cross-examination advanced his general strategy of establishing a reasonable doubt that Windham entered the mall that night with the intent to commit assault. Windham has not identified any other areas of inquiry that should have been pursued or what additional evidence this would have produced. Thus, no ineffective assistance is shown.

### D. Right to Bench Trial.

Fourth, Windham argues that he was denied effective assistance because counsel failed to fully explain his right to have a bench trial. A defendant may waive the right to trial by jury with the consent of the court and the attorney representing the State. TEX. CODE CRIM. PROC. ANN. art. 1.13(a) (Vernon 2005). Windham maintained that he would have preferred to have a bench trial "[b]ecause the judge has to adhere to the law. The jury, you know, I'm up on the hook with them. It could go either way."

Counsel testified that Windham never expressed a desire to have a bench trial. He stated that he would have advised against one because of the possibility of a stricter sentence. Counsel maintained that Windham's sentence confirmed his opinion. Windham produced no evidence in support of his contention that a bench trial reasonably could have changed the result. No ineffective assistance is shown.

### E. Adequate Investigation.

Fifth, Windham asserts that he was denied effective assistance because his lawyer failed to carry out an adequate investigation of his case. In particular, he mentions that counsel did not undertake a background check on his mother.

When an ineffective assistance claim involves an allegation that defense counsel failed to investigate the case, the applicant has the burden to show that a further investigation would have led to specific evidence or witnesses that were available and would have benefited the defense. *See Wilkerson v. State*, 726 S.W.2d 542, 551 (Tex. Crim. App. 1986); *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983).

Counsel described the numerous steps he took to investigate the case. He visited with Windham in jail several times; he reviewed the offense report, the materials provided by the D.A.'s office, and letters that Windham sent him; he reviewed the competency exam; and he investigated Windham's criminal history. Windham did not show what evidence counsel would

5

have found through a more thorough investigation or whether such evidence reasonably could have changed the result of the trial. Thus, no ineffective assistance is shown.

### F. Failure to Pay Adequate Attention.

Sixth, Windham alleges that counsel failed to pay adequate attention and was text messaging during trial. Other than Windham's testimony at the posttrial hearing, there was no evidence to corroborate this allegation. Counsel, for his part, admitted to looking at his cell phone periodically during trial, but only to check the time because he did not have a watch. Counsel testified that he only sent text messages during breaks in the trial. The trial court said it remembered the trial, and it could have reasonably believed counsel's testimony.

The trial court did not abuse its discretion by denying Windham's motion for new trial. We overrule Windham's first issue.

### IV. *Insufficiency of the Evidence*

Windham next argues that the evidence is legally insufficient to show that Pinnow was the owner of the mall or that Windham intended to commit an assault. In reviewing a challenge to the legal sufficiency of the evidence, we examine the evidence in the light most favorable to the judgment and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lane v. State*, 151 S.W.3d 188, 191-92 (Tex. Crim. App. 2004). We do not resolve any conflict in fact, weigh any evidence, or evaluate the credibility of any witnesses, and thus, the factual findings of a criminal jury trial are given great deference. *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991).

A person commits the offense of burglary if, without the effective consent of the owner, the person enters a building (or any portion of a building) not then open to the public with intent to commit a felony, theft, or assault. TEX. PENAL CODE ANN. § 30.02(a)(1) (Vernon 2003). Windham argues first that the evidence was legally insufficient to prove that Pinnow was an "owner" of Golden Triangle Mall.

The Texas Penal Code defines "owner" as "a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." TEXAS PENAL CODE ANN. § 1.07(a)(35)(A) (Vernon Supp. 2010). The Code defines "possession" as "actual care, custody, control, or management." *Id.* § 1.07(a)(39). Any person who has a greater right to the actual care, custody, control, or management of the property

than the appellant may be alleged as the "owner." *Alexander v. State*, 753 S.W.2d 390, 392 (Tex. Crim. App. 1988).

Pinnow testified that he worked as a security guard for a company providing services for Golden Triangle Mall. He explained that his duties were to "[k]eep the peace, protect, and just keep things organized the way they're supposed to be." He went on to describe the procedures he followed in expelling people from the mall.

Viewed in the light most favorable to the verdict, the evidence supports a finding that Pinnow had a greater right to the actual care, custody, control, or management of the property than Windham and was, therefore, an "owner" of the mall. *See Williams v. State*, 537 S.W.2d 936, 939 (Tex. Crim. App. 1976) (holding that night security guard at hospital was "owner" of hospital for purposes of burglary statute).

Windham next argues that the evidence was legally insufficient to prove beyond a reasonable doubt that Windham intended to commit an assault. A person commits assault if he intentionally, knowingly, or recklessly causes bodily injury to another or threatens another with imminent bodily injury. TEX. PENAL CODE ANN. § 22.01(a)(1), (2) (Vernon Pamph. Supp. 2010). In determining whether a defendant has threatened another, the crucial inquiry is whether the assailant acted in such a manner as would, under the circumstances, portend an immediate threat of danger to a person of reasonable sensibility. *Olivas v. State*, 203 S.W.3d 341, 347 (Tex. Crim. App. 2006). Intent may be inferred from circumstantial evidence such as the person's acts, words, and conduct. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). A jury may look at events occurring before, during, and after the commission of the offense, and it may rely on the defendant's actions to show an understanding and common design to do the prohibited act. *Id*. at 49; *see McIntosh v. State*, 297 S.W.3d 536, 541 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (upholding legal sufficiency of conviction of burglary with intent to assault where defendant broke into window of victim's apartment, broke into bathroom where victim was hiding, and had assaulted victim in the past).

Roesler testified that she had been arguing with Windham before work. When Windham confronted Roesler at the mall, he backed Roesler against a wall and told her that if he had a gun he would kill her and then himself. He told her that she could not hide in the mall forever. Windham's conduct scared Roesler, and she called security. After the security guards first told him to leave, Windham reentered the mall twice. Once, he was found hiding in a storage closet.

After Windham's arrest and the end of Roesler's shift, Roesler returned home and found that her apartment had been ransacked and that threatening notes in Windham's handwriting had been left.

Based on this evidence, a rational trier of fact could have found that Windham entered the mall that evening with the intent to commit assault. Accordingly, we hold that the evidence is legally sufficient to support his conviction. Windham's second issue is overruled.

## V. *Conclusion*

The judgment of the trial court is affirmed.


RICK STRANGE

JUSTICE


December 2, 2010

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.