Opinion filed December 2,
2010

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00029-CR

                                                    __________

 

                                 CHARLES WINDHAM, Appellant

 

V.

 

STATE OF TEXAS, Appellee



 

                                  On
Appeal from the 362nd District Court

 

                                                           Denton
County, Texas

 

                                              Trial Court
Cause No. F-2008-1452-D

 



 

M
E M O R A N D U M   O P I N I O N

            The
jury convicted Charles Windham of burglary of a building and assessed his
punishment at fifteen months confinement.  We affirm.

I.  Background
Facts

            On
the night of April 21, 2008, Linda Roesler worked from 9:00 p.m. to midnight at
the Golden Triangle Mall in Denton, Texas.  She was trying to avoid her son,
Charles Windham.  Windham was living with Roesler, and she had recently told him
that he could no longer stay with her.  Windham became upset and the two argued.

            The
Golden Triangle Mall closed to the public at 9:00 p.m.  At that time, security
locked most of the corridors leading into the mall.  Roesler was working her
shift when Windham approached her carrying two black bags.  Roesler testified
that Windham was angry and that he backed her against a wall.  Windham told her
that if he had a gun he would kill her and then himself.  He warned her that
she could not hide in the mall forever.  Roesler was scared.  She testified
that Windham had been taking medication and that his actions were
unpredictable.  She called security.

            Mulugeta
Aga and Cody Pinnow were security guards on duty that night.  Aga recalled that,
when he went to talk with Roesler, she appeared frightened.  Roesler told him that
her son was in the mall.  While Aga and Roesler were talking, an alarm went off
at a nearby kiosk. Pinnow investigated and found Windham.  Pinnow told Windham
that he was not allowed on the property after hours and that he would have to
leave.  Windham appeared cooperative, and the guards watched as he grabbed his
bags and left the mall.

            A
little while later, Aga noticed the latch to a storage closet was open.  Aga
checked inside and found Windham.  Aga told Windham to leave.  Windham appeared
cooperative.  He picked up his bags, and Aga led him out of the mall.  When the
guards looked to see how Windham had reentered the mall, they found a piece of
cardboard had been slipped between the door latch and the frame.

            The
guards were doing a corridor check when they noticed Windham’s bags sitting
inside one of the corridors.  Assuming that he again had reentered the mall,
they started to search for him.  They found Windham walking around the center
court.  When they confronted him this time, he was agitated.  Windham warned
the guards not to touch him because he had military experience.  The guards
called Denton police and escorted Windham out of the mall.

            Officer
Trent Brooks responded to the call a little past midnight.  After talking with
Roesler and the security guards, Brooks arrested Windham for burglary.  Officer
Brooks drove Roesler back to her apartment after her shift.  When they arrived,
they found a kitchen knife stuck through two envelopes into the front door.  The
apartment had been trashed, with writing on the walls, torn-up photos, and
several threatening notes written in Windham’s handwriting.

            At
trial, Windham testified that he had gone to the mall that evening to tell his
mother that he had found a ride to his doctor in Dallas the next day and to
apologize for their earlier argument.

II. 
Issues

            Windham
challenges the trial court’s judgment with two issues.  First, Windham argues
that the trial court erred by denying his motion for new trial because he was
denied effective assistance of counsel.  Second, Windham contends that the
evidence is legally insufficient to support his conviction for burglary, as the
State did not prove that Pinnow was the owner of the mall or that Windham intended
to commit an assault.

III. 
Motion for New Trial

            A
trial court’s denial of a motion for new trial is reviewed for an abuse of
discretion.  Webb v. State, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). 
We view the evidence in the light most favorable to the trial court’s ruling
and uphold the ruling if it was within the zone of reasonable disagreement.  Id. 
A trial court abuses its discretion by denying a motion for new trial only if
no reasonable view of the record could support that ruling.  Charles v.
State, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004).  

            The
standard for ineffective assistance of counsel is the same under the Texas and
Federal Constitutions.  Hernandez v. State, 726 S.W.2d 53, 56-57 (Tex.
Crim. App. 1986).  A court must first determine whether Windham has shown that
counsel’s representation fell below an objective standard of reasonableness
and, if so, then determine whether there is a reasonable probability that the
result would have been different but for counsel’s errors.  Strickland v.
Washington, 466 U.S. 668, 687 (1984); Thompson v. State, 9 S.W.3d
808, 812 (Tex. Crim. App. 1999).  The appellant has the burden of establishing
that counsel was ineffective.  Thompson, 9 S.W.3d at 813.  In
considering whether counsel’s representation fell below an objective standard
of reasonableness, a court must indulge in a strong presumption in counsel’s
favor.  Id.

            A. 
Mental History.

            Windham
initially argues that he was denied effective assistance because counsel failed
to bring up his mental history and his mental condition on the date of the
burglary.  Windham claimed to suffer from bipolar disorder, posttraumatic
stress disorder, adult antisocial disorder with agoraphobia, and intermittent
explosive disorder.  He contends that presenting evidence of these disorders
would have undercut the requisite intent for burglary.

            Counsel
testified, however, that he chose not to introduce evidence of Windham’s mental
history because he felt this would open the door to Windham’s drug use.  Additionally,
Windham’s mental disability claims are at odds with a competency evaluation
that found he was malingering.  Windham’s suggested strategy could have opened
the door to this evidence as well.  Trial counsel’s decision to avoid Windham’s
mental condition was part of a sound trial strategy, and therefore, no
ineffective assistance is shown.     

            B. 
Roesler’s Criminal History.

            Second,
Windham argues that he was denied effective assistance because counsel failed
to impeach Roesler with her status as a probationer.  Windham wanted counsel to
question Roesler on her felony probation for possession of cocaine,
methamphetamine, and organized crime.  Windham suspected that Roesler might
have struck a deal with the State regarding her probation.

            Counsel
testified that he did not bring up the 1999 felony cases against Roesler
because adjudication on them was deferred and, thus, they were not convictions
available for impeachment.  At the time of Windham’s trial, a witness on
deferred adjudication could be cross-examined on the status of their probation
to show a potential motive, bias, or interest to testify for the State.  Maxwell
v. State, 48 S.W.3d 196, 200 (Tex. Crim. App. 2001).[1] 
Counsel testified that he did not use the 1999 felony cases to argue bias
because he did not know if Roesler was still on probation, and he considered
the cases too remote for her to have an incentive to make a deal with the
State.  The record does not indicate whether Roesler was still on probation,
but the prosecutor testified that no deal had been made with Roesler regarding
her testimony.  Even if we assume that counsel should have investigated this
issue more thoroughly, Windham did not provide any evidence that impeaching
Roesler with her probation status reasonably could have changed the result of
the trial.

C. 
Cross-Examination of Witnesses.

            Third,
Windham claims that he was denied effective assistance because counsel failed
to adequately cross-examine witnesses.  At the hearing on his motion for new
trial, Windham asserted that counsel “hardly questioned anybody.” 

            Counsel
testified that he cross-examined witnesses as his trial strategy demanded.  The
record shows that, on cross-examination, counsel questioned the State’s witnesses
about Windham’s behavior that night, if Windham explained to them why he was at
the mall, whether they witnessed Windham threatening his mother, and whether
Windham gave any indication of having a physical ailment.  Counsel’s
cross-examination advanced his general strategy of establishing a reasonable
doubt that Windham entered the mall that night with the intent to commit
assault.  Windham has not identified any other areas of inquiry that should
have been pursued or what additional evidence this would have produced.  Thus,
no ineffective assistance is shown.

D. 
Right to Bench Trial.

            Fourth,
Windham argues that he was denied effective assistance because counsel failed
to fully explain his right to have a bench trial.  A defendant may waive the
right to trial by jury with the consent of the court and the attorney
representing the State.  Tex. Code Crim.
Proc. Ann.  art. 1.13(a)
(Vernon 2005).  Windham maintained that he would have preferred to have a bench
trial “[b]ecause the judge has to adhere to the law.  The jury, you know, I’m
up on the hook with them.  It could go either way.”

            Counsel
testified that Windham never expressed a desire to have a bench trial.  He stated
that he would have advised against one because of the possibility of a stricter
sentence.  Counsel maintained that Windham’s sentence confirmed his opinion.  Windham
produced no evidence in support of his contention that a bench trial reasonably
could have changed the result.  No ineffective assistance is shown.

E. 
Adequate Investigation.

            Fifth,
Windham asserts that he was denied effective assistance because his lawyer
failed to carry out an adequate investigation of his case.  In particular, he mentions
that counsel did not undertake a background check on his mother. 

            When
an ineffective assistance claim involves an allegation that defense counsel
failed to investigate the case, the applicant has the burden to show that a
further investigation would have led to specific evidence or witnesses that
were available and would have benefited the defense.  See Wilkerson v. State,
726 S.W.2d 542, 551 (Tex. Crim. App. 1986); King v. State, 649 S.W.2d 42,
44 (Tex. Crim. App. 1983).  

            Counsel
described the numerous steps he took to investigate the case.  He visited with
Windham in jail several times; he reviewed the offense report, the materials
provided by the D.A.’s office, and letters that Windham sent him; he reviewed
the competency exam; and he investigated Windham’s criminal history.  Windham
did not show what evidence counsel would have found through a more thorough
investigation or whether such evidence reasonably could have changed the result
of the trial.  Thus, no ineffective assistance is shown.  

F. 
Failure to Pay Adequate Attention.

            Sixth,
Windham alleges that counsel failed to pay adequate attention and was text
messaging during trial.  Other than Windham’s testimony at the posttrial
hearing, there was no evidence to corroborate this allegation.  Counsel, for
his part, admitted to looking at his cell phone periodically during trial, but
only to check the time because he did not have a watch.  Counsel testified that
he only sent text messages during breaks in the trial.  The trial court said it
remembered the trial, and it could have reasonably believed counsel’s
testimony.

            The
trial court did not abuse its discretion by denying Windham’s motion for new
trial.  We overrule Windham’s first issue. 

IV. 
Insufficiency of the Evidence

            Windham
next argues that the evidence is legally insufficient to show that Pinnow was the
owner of the mall or that Windham intended to commit an assault.  In reviewing
a challenge to the legal sufficiency of the evidence, we examine the evidence
in the light most favorable to the judgment and determine whether any rational
trier of fact could have found the essential elements of the offense beyond a
reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Lane
v. State, 151 S.W.3d 188, 191-92 (Tex. Crim. App. 2004).  We do not resolve
any conflict in fact, weigh any evidence, or evaluate the credibility of any
witnesses, and thus, the factual findings of a criminal jury trial are given
great deference.  Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App.
1991). 

            A
person commits the offense of burglary if, without the effective consent of the
owner, the person enters a building (or any portion of a building) not then
open to the public with intent to commit a felony, theft, or assault.  Tex. Penal Code Ann. § 30.02(a)(1)
(Vernon 2003).  Windham argues first that the evidence was legally insufficient
to prove that Pinnow was an “owner” of Golden Triangle Mall.

            The
Texas Penal Code defines “owner” as “a person who has title to the property,
possession of the property, whether lawful or not, or a greater right to
possession of the property than the actor.”  Texas
Penal Code Ann. § 1.07(a)(35)(A) (Vernon Supp. 2010).  The Code defines
“possession” as “actual care, custody, control, or management.”  Id. §
1.07(a)(39).  Any person who has a greater right to the actual care, custody,
control, or management of the property than the appellant may be alleged as the
“owner.”  Alexander v. State, 753 S.W.2d 390, 392 (Tex. Crim. App.
1988).  

            Pinnow
testified that he worked as a security guard for a company providing services
for Golden Triangle Mall.  He explained that his duties were to “[k]eep the
peace, protect, and just keep things organized the way they’re supposed to be.” 
He went on to describe the procedures he followed in expelling people from the mall.

            Viewed
in the light most favorable to the verdict, the evidence supports a finding
that Pinnow had a greater right to the actual care, custody, control, or
management of the property than Windham and was, therefore, an “owner” of the
mall.  See Williams v. State, 537 S.W.2d 936, 939 (Tex. Crim. App. 1976)
(holding that night security guard at hospital was “owner” of hospital for
purposes of burglary statute).  

            Windham
next argues that the evidence was legally insufficient to prove beyond a
reasonable doubt that Windham intended to commit an assault.  A person commits
assault if he intentionally, knowingly, or recklessly causes bodily injury to
another or threatens another with imminent bodily injury.  Tex. Penal Code Ann. § 22.01(a)(1), (2)
(Vernon Pamph. Supp. 2010).  In determining whether a defendant has threatened
another, the crucial inquiry is whether the assailant acted in such a manner as
would, under the circumstances, portend an immediate threat of danger to a
person of reasonable sensibility.  Olivas v. State, 203 S.W.3d 341, 347
(Tex. Crim. App. 2006).  Intent may be inferred from circumstantial evidence
such as the person’s acts, words, and conduct.  Guevara v. State, 152
S.W.3d 45, 50 (Tex. Crim. App. 2004).  A jury may look at events occurring
before, during, and after the commission of the offense, and it may rely on the
defendant’s actions to show an understanding and common design to do the
prohibited act.  Id. at 49; see McIntosh v. State, 297 S.W.3d
536, 541 (Tex. App.—Houston [1st Dist.] 2009, pet. ref’d) (upholding legal
sufficiency of conviction of burglary with intent to assault where defendant
broke into window of victim’s apartment, broke into bathroom where victim was
hiding, and had assaulted victim in the past). 

            Roesler
testified that she had been arguing with Windham before work.  When Windham
confronted Roesler at the mall, he backed Roesler against a wall and told her
that if he had a gun he would kill her and then himself.  He told her that she
could not hide in the mall forever.  Windham’s conduct scared Roesler, and she
called security.  After the security guards first told him to leave, Windham
reentered the mall twice.  Once, he was found hiding in a storage closet. After
Windham’s arrest and the end of Roesler’s shift, Roesler returned home and
found that her apartment had been ransacked and that threatening notes in
Windham’s handwriting had been left.

            Based
on this evidence, a rational trier of fact could have found that Windham entered
the mall that evening with the intent to commit assault.  Accordingly, we hold
that the evidence is legally sufficient to support his conviction.  Windham’s
second issue is overruled. 

V.  Conclusion

The judgment of
the trial court is affirmed.  

                                                                              

            

RICK STRANGE

                                                                                    JUSTICE

 

December 2, 2010

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









                [1]The Court of Criminal Appeals recently overruled Maxwell
and now requires a questioner to show some logical connection between the
witness’s status as a probationer and the witness’s testimony.  Irby v.
State, No. PD-1097-08, 2010 WL 2382594, at *7 (Tex. Crim. App. June 16,
2010).