02-09-389-CR















 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00389-CR

 

 


 
 
 Jessie James Layton
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

------------

 

FROM THE
355th District Court OF Hood COUNTY

------------

MEMORANDUM OPINION[1]

------------

          A jury convicted Appellant Jessie
James Layton of possession of a firearm by a felon.[2]  The jury assessed punishment at seventeen
years’ confinement.  In one issue, Layton
argues that the trial court erred by admitting Layton’s videotaped statement to
police without redaction of statements Layton believes were threats against
certain individuals and their families. 
We will affirm.

          On January 12, 2009, police received
information that Layton possessed stolen property related to a home burglary,
including jewelry and guns.  The police
went to an RV park managed by Layton’s stepfather—Jeff Simpson—to perform a
“knock-and-talk” regarding the stolen property. 
Layton also lived at the RV park.  While at the RV park,
police obtained consent to search the property from both Simpson and Layton.  Inside a storage building, police found two
guns and a green duffle bag containing numerous pieces of jewelry.  The police arrested Layton, a convicted felon
who had been released from prison roughly three months before, for the charge
of possession of a firearm by a felon.

          The next day, at Layton’s request, investigator
Gay Johnson spoke with Layton.  After
signing a waiver of his Miranda
rights, Layton provided a videotaped interview of how the jewelry and guns came
to be in the storage building.  It is
clear from the interview that Layton wished to clear his name as a possible
suspect in the home burglary and wanted to explain how he came into possession
of the jewelry and guns.  According to
Layton, an acquaintance named Mona brought a friend named Bryan with her to
Layton’s RV wanting to sell Layton the stolen property.  Layton agreed to “hold” these items for
Bryan, but he also stated that he intended to raise $450 to purchase all the
stolen property found in the storage building. 
Layton stated that he believed he had been “set up.”  Layton also made numerous statements that
could be interpreted as Layton intending to seek revenge upon Mona and Bryan,
including statements that he would “put hell on their ass;”
that “[Mona] don’t want no shit;” and that “[Bryan]’s in big trouble.  His whole family is in big trouble.  I can tell you that.”

          During a pretrial hearing held outside
the presence of the jury, Layton argued that the videotaped interview contained
“several pretty blatant swear words, and one threat made to an individual . . . and that those would . . .
be more prejudicial than probative.”  The
trial court overruled his objection. 
When the State offered the video at trial, Layton again objected saying,
“Again, Your Honor, we would object to the relevance of -- of it as far as
being more prejudicial and probative in certain parts.  We ask for a running objection during the
playing of [the video].”  The trial court
again overruled Layton’s objection and noted the running objection.  The video was played for the jury during
trial.

          At trial, Simpson testified that
Layton had previously showed him the guns and even offered the guns to him
because Simpson had guns stolen from him previously.  Simpson also testified that when he provided
the police access to the storage building, he was surprised that the guns were
still there because he had instructed Layton to get rid of them.  Simpson averred that he had never seen Layton
handle the guns and that multiple people had access to
the shed.  A jury found Layton guilty and
sentenced him to seventeen years’ confinement. 
This appeal followed.

In
his sole point, Layton argues that the trial court “committed harmful error” by
admitting portions of his videotaped statement that he made to the police.  Layton contends that the trial court erred by
allowing the State to play portions of the videotape in which Layton can be
heard saying several curse words and, according to Layton, making threats to
multiple individuals.

The
State counters with a threefold argument. 
First, the State contends that Layton failed to specifically indicate to
the trial court which statements by Layton were objectionable; thus, Layton has
not preserved this potential error for our review.  Second, the State contends that the trial
court did not err by ruling that the statements made by Layton were relevant to
show that he did possess the guns. 
Finally, the State argues that even if the trial court erred by allowing
the jury to hear “swear words” and “one threat made to an individual,” the
error was harmless.

We
conclude that although Layton objected that the videotaped interview contained
swear words and one threat, Layton failed to specify or identify which
statement or words were objectionable. 
When an exhibit contains both admissible and inadmissible material, the
objection must specifically refer to the material deemed objectionable.  See Jones v. State, 843 S.W.2d
487, 492 (Tex. Crim. App. 1992) (explaining that trial court need not sort
through challenged evidence to segregate admissible from excludable), cert.
denied, 507 U.S. 1035
(1993), abrogated on other grounds by Maxwell v. State, 48 S.W.3d
196, 200 (Tex. Crim. App. 2001); Hernandez v. State, 599 S.W.2d
614, 617 (Tex. Crim. App. 1980) (op. on reh’g)
(holding objection inadequate to preserve error because it was leveled at
entire exhibit and failed to specify and identify objectionable part); see
also Willover v. State, 70 S.W.3d
841, 847 (Tex. Crim. App. 2002) (following Jones and holding that when
proffered evidence contains both admissible and inadmissible statements and
proponent fails to segregate and specifically offer the admissible statements,
trial court may properly exclude entire proffer).

In
this case, Layton objected in the trial court that the videotape contains “one
threat.”  Layton did not indicate to the
trial court which words or statements were objectionable.  Indeed, Layton does not address in his brief
on appeal which words or statements were objectionable, and even argues now
that Layton “made threatening statements against the two individuals and the
individuals’ families as well as other people he believed ‘set him up’ by
placing the property, including the guns, in his possession, then calling the
police to report he had possession of the property.”  We hold that Layton’s objections to the trial
court were insufficiently specific to preserve the complaint he now makes on
appeal.  See Jones, 843 S.W.2d
at 492; Hernandez, 599 S.W.2d at 617; see also Willover, 70 S.W.3d
at 847.

But
even if the trial court erred by allowing the jury to watch the taped interview
where Layton used profanity and made potential threats to others, the alleged
error was nevertheless harmless.  See
Cockrell v. State, 933 S.W.2d 73, 90 (Tex. Crim. App. 1996), cert. denied, 520 U.S. 1173 (1997) (conducting a harm analysis
after determining that the trial court did not commit error).

Rule
44.2(b) of the Texas Rules of Appellate Procedure provides that any nonconstitutional error that does not affect substantial rights must be
disregarded.  Tex. R.
App. P. 44.2(b).  A substantial
right is affected when the error had a substantial and injurious effect or influence in
determining the jury’s verdict. King v. State, 953 S.W.2d
266, 271 (Tex. Crim. App. 1997). 
The conviction should not be overturned if the appellate court, after examining the
record as whole, has fair assurance that the error did not influence the jury, or had but a
slight effect.  Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

Our
examination of the record as a whole gives us fair assurance that the version
of the videotaped interview, including Layton’s profanity and statements that
could be interpreted as threats against individuals, did not have a
substantial and injurious effect or influence on the jury’s determination that
Layton possessed a firearm.  Here, the
record reveals that during the guilt-innocent phase of trial, the State did not
focus on Layton’s use of profanity or his pointed statements toward the
individuals who had brought him the guns. 
In his videotaped interview, Layton acknowledges that he had possessed
the guns but claims that he did not steal them or the jewelry.  Also, Simpson, Layton’s stepfather, testified
that he had urged Layton to get rid of the guns.  Contrasting the brevity of the potentially
objectionable language in Layton’s interview with the direct testimony by
Simpson that Layton possessed the firearms and Simpson’s own videotaped
statement that he possessed the guns, we cannot say that the alleged
objectionable statements substantially swayed or influenced the jury’s
verdict.  See King, 953 S.W.2d
at 271 (citing Kotteakos v. United States, 328 U.S. 750, 776, 66 S. Ct. 1239,
1253 (1946)) (establishing that there is no harm upon the admission of evidence unless the admission had a substantial and
injurious influence in determining the jury’s verdict).  Thus, we overrule Layton’s sole issue and
affirm the trial court’s judgment.

 

 

 

BILL MEIER
JUSTICE

 

PANEL: 
GARDNER, WALKER, and MEIER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  March 3, 2011











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code § 46.04 (Vernon
Supp. 2010).