

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-09-00389-CR

JESSIE JAMES LAYTON                                         APPELLANT

V.

THE STATE OF TEXAS                                              STATE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

## MEMORANDUM OPINION[1]

------------

A jury convicted Appellant Jessie James Layton of possession of a firearm by a felon.[2]  The jury assessed punishment at seventeen years' confinement.  In one issue, Layton argues that the trial court erred by admitting Layton's videotaped statement to police without redaction of statements Layton believes were threats against certain individuals and their families.  We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code § 46.04 (Vernon Supp. 2010).

On January 12, 2009, police received information that Layton possessed stolen property related to a home burglary, including jewelry and guns. The police went to an RV park managed by Layton's stepfather—Jeff Simpson—to perform a "knock-and-talk" regarding the stolen property. Layton also lived at the RV park. While at the RV park, police obtained consent to search the property from both Simpson and Layton. Inside a storage building, police found two guns and a green duffle bag containing numerous pieces of jewelry. The police arrested Layton, a convicted felon who had been released from prison roughly three months before, for the charge of possession of a firearm by a felon.

The next day, at Layton's request, investigator Gay Johnson spoke with Layton. After signing a waiver of his *Miranda* rights, Layton provided a videotaped interview of how the jewelry and guns came to be in the storage building. It is clear from the interview that Layton wished to clear his name as a possible suspect in the home burglary and wanted to explain how he came into possession of the jewelry and guns. According to Layton, an acquaintance named Mona brought a friend named Bryan with her to Layton's RV wanting to sell Layton the stolen property. Layton agreed to "hold" these items for Bryan, but he also stated that he intended to raise $450 to purchase all the stolen property found in the storage building. Layton stated that he believed he had been "set up." Layton also made numerous statements that could be interpreted as Layton intending to seek revenge upon Mona and Bryan, including statements

2

that he would "put hell on their ass;" that "[Mona] don't want no shit;" and that "[Bryan]'s in big trouble. His whole family is in big trouble. I can tell you that."

During a pretrial hearing held outside the presence of the jury, Layton argued that the videotaped interview contained "several pretty blatant swear words, and one threat made to an individual . . . and that those would . . . be more prejudicial than probative." The trial court overruled his objection. When the State offered the video at trial, Layton again objected saying, "Again, Your Honor, we would object to the relevance of -- of it as far as being more prejudicial and probative in certain parts. We ask for a running objection during the playing of [the video]." The trial court again overruled Layton's objection and noted the running objection. The video was played for the jury during trial.

At trial, Simpson testified that Layton had previously showed him the guns and even offered the guns to him because Simpson had guns stolen from him previously. Simpson also testified that when he provided the police access to the storage building, he was surprised that the guns were still there because he had instructed Layton to get rid of them. Simpson averred that he had never seen Layton handle the guns and that multiple people had access to the shed. A jury found Layton guilty and sentenced him to seventeen years' confinement. This appeal followed.

In his sole point, Layton argues that the trial court "committed harmful error" by admitting portions of his videotaped statement that he made to the

3

police.  Layton contends that the trial court erred by allowing the State to play portions of the videotape in which Layton can be heard saying several curse words and, according to Layton, making threats to multiple individuals.

The State counters with a threefold argument.  First, the State contends that Layton failed to specifically indicate to the trial court which statements by Layton were objectionable; thus, Layton has not preserved this potential error for our review.  Second, the State contends that the trial court did not err by ruling that the statements made by Layton were relevant to show that he did possess the guns.  Finally, the State argues that even if the trial court erred by allowing the jury to hear "swear words" and "one threat made to an individual," the error was harmless.

We conclude that although Layton objected that the videotaped interview contained swear words and one threat, Layton failed to specify or identify which statement or words were objectionable.  When an exhibit contains both admissible and inadmissible material, the objection must specifically refer to the material deemed objectionable.  *See Jones v. State*, 843 S.W.2d 487, 492 (Tex. Crim. App. 1992) (explaining that trial court need not sort through challenged evidence to segregate admissible from excludable), *cert. denied*, 507 U.S. 1035 (1993), *abrogated on other grounds by Maxwell v. State*, 48 S.W.3d 196, 200 (Tex. Crim. App. 2001); *Hernandez v. State*, 599 S.W.2d 614, 617 (Tex. Crim. App. 1980) (op. on reh'g) (holding objection inadequate to preserve error

4

because it was leveled at entire exhibit and failed to specify and identify objectionable part); *see also Willover v. State*, 70 S.W.3d 841, 847 (Tex. Crim. App. 2002) (following *Jones* and holding that when proffered evidence contains both admissible and inadmissible statements and proponent fails to segregate and specifically offer the admissible statements, trial court may properly exclude entire proffer).

In this case, Layton objected in the trial court that the videotape contains "one threat." Layton did not indicate to the trial court which words or statements were objectionable. Indeed, Layton does not address in his brief on appeal which words or statements were objectionable, and even argues now that Layton "made threatening statements against the two individuals and the individuals' families as well as other people he believed 'set him up' by placing the property, including the guns, in his possession, then calling the police to report he had possession of the property." We hold that Layton's objections to the trial court were insufficiently specific to preserve the complaint he now makes on appeal. *See Jones*, 843 S.W.2d at 492; *Hernandez*, 599 S.W.2d at 617; *see also Willover*, 70 S.W.3d at 847.

But even if the trial court erred by allowing the jury to watch the taped interview where Layton used profanity and made potential threats to others, the alleged error was nevertheless harmless. *See Cockrell v. State*, 933 S.W.2d 73,

5

90 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1173 (1997) (conducting a harm analysis after determining that the trial court did not commit error).

Rule 44.2(b) of the Texas Rules of Appellate Procedure provides that any nonconstitutional error that does not affect substantial rights must be disregarded. Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). The conviction should not be overturned if the appellate court, after examining the record as whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

Our examination of the record as a whole gives us fair assurance that the version of the videotaped interview, including Layton's profanity and statements that could be interpreted as threats against individuals, did not have a substantial and injurious effect or influence on the jury's determination that Layton possessed a firearm. Here, the record reveals that during the guilt-innocent phase of trial, the State did not focus on Layton's use of profanity or his pointed statements toward the individuals who had brought him the guns. In his videotaped interview, Layton acknowledges that he had possessed the guns but claims that he did not steal them or the jewelry. Also, Simpson, Layton's stepfather, testified that he had urged Layton to get rid of the guns. Contrasting

6

the brevity of the potentially objectionable language in Layton's interview with the direct testimony by Simpson that Layton possessed the firearms and Simpson's own videotaped statement that he possessed the guns, we cannot say that the alleged objectionable statements substantially swayed or influenced the jury's verdict. *See King*, 953 S.W.2d at 271 (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)) (establishing that there is no harm upon the admission of evidence unless the admission had a substantial and injurious influence in determining the jury's verdict). Thus, we overrule Layton's sole issue and affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL: GARDNER, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 3, 2011

7